**W.R. GRACE & CO., et al., Plaintiffs,**

v.

**GRACECARE, INC., et al., Defendants.**

**Civ. A. No. WN–93–288.**

United States District Court,
D. Maryland.

Nov. 18, 1993.

Thomas A. Smart and David S. Pegno, Kaye, Scholer, Fierman, Hays & Handler, New York City, Jeffrey P. Ayres and James Dunbar, Venable, Baetjer & Howard, Baltimore, MD, for plaintiffs.

Alan H. Bernstein and Robert S. Silver, Caesar, Rivise, Bernstein, Cohen & Pokolitow, Ltd., Philadelphia, PA, and Howard G. Goldberg, Smith, Somerville & Case, Baltimore, MD, for defendants.

### MEMORANDUM AND ORDER

KLEIN, United States Magistrate Judge.

This matter is before the Court on plaintiffs' opposed Motion to Exclude Testimony of Defendants' Expert Witness (Paper No. 32) and defendants' opposed Motion to Compel (Paper No. 39). Judge Nickerson referred the case to the undersigned for resolution of non-dispositive pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is . deemed necessary. Local Rule 105.6. The motions will be treated in turn.

Plaintiffs seek to exclude the testimony of or, alternatively, to disqualify, defendants' proposed expert witness, David B. Allen. Mr. Allen is a practicing trademark attorney of forty years' experience and a member of the Ohio bar. He was formerly an Acting Director of the Trademark Examining Operation at the U.S. Patent and Trademark Office (PTO) and a member of the Trademark Trial and Appeal Board (TTAB). Currently, Mr. Allen consults with attorneys on trademark matters, testifies as an expert witness in trademark cases, and publishes *Allen's Trademark Digest.* Defendants have retained Mr. Allen as their expert witness for trial; he has not entered an appearance as an attorney in this case.

On April 8, 1993, plaintiff W.R. Grace's corporate trademark counsel John P. Rynkiewicz telephoned Mr. Allen "to retain him to render advice to Grace in connection with this litigation and in connection with a trademark application for the mark 'P.J. McKenzie's' pending before the [PTO]." Paper No. 32, Rynkiewicz Aff. at 2.[1] The two men have known one another since they were both employed at the PTO. *Id.* Mr. Rynkiewicz avers as follows:

> Before discussing the issues on which I wanted Mr. Allen's advice, I asked if he had a conflict of interest with [defendant] GraceCare and, after he promptly responded he did not, described Grace's trademark litigation against GraceCare.

> In my conversation with Mr. Allen, I discussed the marks at issue, some of the issues of trademark law that had arisen in the case, including the possibility and appropriateness of expert testimony on legal issues, and some of the arguments defendants were making. The discussion included a disclosure of some of [lead outside counsel] Mr. Smart's thoughts and my own on certain issues in the case.

*Id.* at 2–3. Mr. Allen billed and was compensated for thirty minutes of his time to discuss this case and the "P.J. McKenzie's" matter. *Id.* at 3. Shortly after Mr. Allen tendered his bill, Mr. Rynkiewicz again telephoned him. Mr. Rynkiewicz asked Mr. Allen to perform research on the "P.J. McKenzie" matter, which his office completed, billed, and for which he was compensated. At deposition, Mr. Allen said that Mr. Rynkiewicz mentioned "the other matter [the instant lawsuit] as well" during that telephone conversation. Paper No. 32, Allen Depo. at 95.[2]

Mr. Rynkiewicz also avers:

> At the time I contacted Mr. Allen, I intended to retain him as an attorney who is an expert on trademark laws for the purpose of advising Grace regarding issues that had arisen in this lawsuit, including the appropriateness *vel non* of expert testimony, an issue on which I sought Mr. Allen's advice after disclosing Mr. Smart's own views on the subject. I did so because Mr. Smart and I . . . were concerned that defendants might seek to offer expert testimony on legal issues, and we wanted to discuss the appropriateness of such testimony with Mr. Allen and have him available as a potential rebuttal expert witness should such testimony become necessary.

> I believed that during our conversation an attorney-client relationship was created between Mr. Allen and Grace since I was seeking legal advice for which I agreed to pay. . . . I did not consider his representation in either this case or the P.J. McKenzie's matter to be over.

Paper No. 32, Rynkiewicz Aff. at 4–5.[3]

On May 7, 1993, defendants' attorney Robert S. Silver telephoned Mr. Allen "to inquire whether he would be available to act as an expert witness on various trademark issues in the present case." Paper No. 42, Silver Aff. at 1. Apparently, Mr. Silver's senior partner, Alan H. Bernstein, had once argued

---

**1.** Plaintiffs filed the instant lawsuit on January 29, 1993. The "P.J. McKenzie" matter is unrelated to this suit.

**2.** Mr. Allen's current health prevents him from submitting an affidavit in opposition to plaintiffs' motion.

**3.** Ironically, defendants propose to offer Mr. Allen as an expert on issues of trademark law—the very eventuality plaintiffs allege they discussed with Mr. Allen. Equally ironic is the argument plaintiffs strenuously make that Mr. Allen cannot so testify as he may offer legal opinions which might usurp the province of the trial judge.

a case before Mr. Allen at the TTAB and an amusing exchange had endeared them to one another. *Id.; see* Paper No. 32, Allen Depo. at 83. Mr. Silver identified himself as defendant GraceCare's attorney in this lawsuit and inquired whether Mr. Allen had any conflict with plaintiff W.R. Grace:

> Mr. Allen told me that he recalled having a prior, but very general telephone conversation with a Mr. Rynkiewicz ... about two pending matters, but did not exactly recall the content of the conversation.

> \* \* \* \* \* \*

> Sometime thereafter, Mr. Allen called me to discuss the matter further. Mr. Allen told me that Mr. Rynkiewicz had previously called him to discuss a matter pending before the PTO regarding a trademark "P.J. McKenzie," [and did some research].... [Mr. Allen also said that] Mr. Rynkiewicz told him that there was also a W.R. Grace suit pending in Baltimore, MD, but Mr. Allen said that Mr. Rynkiewicz did not tell him who the defendants were or trademarks involved in that case, nor did Mr. Rynkiewicz tell him about the issues, any strategies, thoughts, or any other confidential or privileged information. Mr. Allen told me that Mr. Rynkiewicz had asked Mr. Allen about the types of issues Mr. Allen had previously testified on in prior litigation and that Mr. Allen had discussed with Mr. Rynkiewicz the areas of his prior testimony in other cases.

> Mr. Allen told me that he had billed Mr. Rynkiewicz a nominal sum for those general conversations, but had assumed that since he had not heard anything more from Mr. Rynkiewicz, that his services were no longer required.

Paper No. 42, Silver Aff. at 2–3.[4] Mr. Silver avers that Mr. Allen has not told him any confidential or privileged information. *Id.* at 4. There is no indication in the record that Mr. Allen disclosed to plaintiffs' counsel his contact with defendants' counsel.

This motion presents an issue of first impression. A modest body of law exists deal-

ing with the disqualification of experts and the disqualification of attorney-advocates (*i.e.,* lawyers who represent clients in court). The Court has found no case which deals specifically with a party seeking to disqualify an attorney-expert. The law cited by the parties offers general guidance, but any analysis is necessarily very fact specific.

■ The Court has the inherent power to disqualify experts. That power derives from the necessity to protect privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings. *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 278 (S.D.Ohio 1988); *see Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1045 (W.D.Mo.1984); *Miles v. Farrell,* 549 F.Supp. 82, 84 (N.D.Ill.1982). Courts are generally reluctant to disqualify expert witnesses. *Palmer v. Ozbek,* 144 F.R.D. 66, 67 (D.Md.1992). Indeed, sometimes disqualification motions are brought for purely strategic purposes. *See Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 729 (E.D.Va.1990); *Paul,* 123 F.R.D. at 281–82.

■ At base, it cannot be disputed that Mr. Allen had discussions with plaintiff about expert testimony in general and his potential expert testimony in particular. The appropriate standard of review for disqualification motions directed toward experts is two-fold:

> the Court must determine "whether the attorney or client acted reasonably in assuming that a confidential relationship of some sort existed [with the expert], and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate."

*Palmer,* 144 F.R.D. at 67 (*quoting Paul,* 123 F.R.D. at 278). The focus of the second part of that inquiry is whether any confidential or privileged information was disclosed to the expert. *Wang Laboratories, Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va.1991). Courts have applied the *Paul* test in very

---

4. Mr. Silver also alludes to the abhorrent litigation practice of engaging a potential expert in general discussions of a case in order to disqualify the expert later if retained by an opponent. *Id.* at 3. The Court will not, without more, impute such motives to an officer of the Court.

deliberate, fact-based fashion, and with some difficulty. In particular, courts have struggled with whether to hold experts to the same standards (*i.e.*, ethical standards) to which attorney-advocates would be held if they switched clients during the course of representation.[5]

■■■ Plaintiffs argue that Mr. Allen not only functioned as their potential expert, but as their attorney. More accurately, he may have functioned as a legal advisor (as contrasted with an attorney-advocate) in this case. Such a relationship, plaintiffs contend, is a confidential one to which attorneys are held to a high standard. An attorney who switches sides is subject to disqualification for conflict of interest. The Court entertains such a motion as part of its supervisory power over members of the bar with a view toward preventing the "appearance of impropriety." All doubts are resolved in favor of disqualification. *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir.1977); *Rogers v. Pittston Co.*, 800 F.Supp. 350, 355 (W.D.Va.1992), *aff'd*, 996 F.2d 1212 (4th Cir. 1993) (table); *Stitz v. Bethlehem Steel Corp.*, 650 F.Supp. 914, 916 (D.Md.1987). The standard for attorney disqualification is the "substantial relationship" test. An attorney may not represent a client against a former client if the subject matter of the litigation is substantially related. *Stitz*, 650 F.Supp. at 916 (*citing Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980)). A substantial relationship is presumed where there is "a reasonable probability that confidences were disclosed" which could be used adversely later. *Id.* (*citing Trone*, 621 F.2d at 998); *see Rogers*, 800 F.Supp. at 354; *Tessier*, 731 F.Supp. at 731; *Carlson v. Langdon*, 751 P.2d 344, 348 (Wyo. 1988).[6] This presumption does nothing more

than prevent the appearance of impropriety. Like the Court's inherent power to disqualify experts, this is a salutary goal meant to ensure public confidence in the fairness and integrity of the legal system.

■■■ Whether or not Mr. Allen functioned as an attorney, as that term is understood to be either an advocate in court or to render legal advice outside of court, plaintiffs sought to use Mr. Allen as an expert. It cannot be ignored, however, that Mr. Allen is also an attorney. The parties dispute whether confidences of plaintiffs' counsel passed to Mr. Allen. Mr. Rynkiewicz says they did; Mr. Silver says he does not know of any. Under the circumstances of this case, the Court finds it was reasonable for Mr. Rynkiewicz to assume that the relationship he was developing was confidential. The duration of that relationship may have been minimal. No confidences regarding a substantially related matter may have passed. No confidences at all may have passed. The contact may have been nothing more than a job interview. Regardless of these possibilities, the duties of an attorney-expert are greater than the ordinary expert. Mr. Rynkiewicz was speaking to another attorney and it is reasonable to assume that that contact took on a confidential character because of Mr. Allen's profession and proposed role alone. As to whether the contact matured into a matter sufficiently substantial to merit disqualification, the analysis must return to Mr. Allen's status. Where there is a confidential relationship with an attorney-expert, a court should search for the reasonable probability that the attorney-expert has confidences on the matter at issue, and not simply that confidences passed. Here, that inquiry is not necessarily circular as the very nature of this

---

5. *See Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F.Supp. 334, 338–39 (N.D.Ill. 1990) (attorney disciplinary rules do not apply to experts); *Paul*, 123 F.R.D. at 281 (attorney occupies higher position of trust with related fiduciary duties than does expert); *EEOC v. Locals 14 & 15, Int'l Union of Operating Engineers*, 25 Empl. Prac.Dec. (CCH) ¶ 31,783 (S.D.N.Y.1981) (attorney-advocate and expert fulfill different functions; attorney disciplinary rules do not apply to experts); *but see Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 192 (S.D.N.Y.1988) (although prospective expert offered no legal advice, an attorney-client relationship results when

legal advice is sought from a legal advisor); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D.Minn.1986) (disqualification of experts, like that of attorneys, must focus on protecting confidential relationship); *Conforti & Eisele, Inc. v. Division of Building & Construction*, 170 N.J.Super. 64, 405 A.2d 487, 491 (1979) (same).

6. "It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone*, 621 F.2d at 999.

confidential relationship concerned Mr. Allen. Mr. Rynkiewicz claims he discussed the possibility that defendants would offer an attorney-expert at trial. If one were allowed to testify, Mr. Allen was to be plaintiffs' rebuttal witness. There is a reasonable probability that Mr. Allen received confidences about his proposed strategic role at trial. He in turn became the very attorney-expert that plaintiffs anticipated rebutting. Any confidences would have related to him. Whether or not Mr. Allen acted improperly, this scenario was cause for circumspection. Indeed, it is the scenario and Mr. Allen's status as an attorney which counsels resolving all doubts in favor of disqualification to avoid the appearance of impropriety and to preserve the integrity of this proceeding. Accordingly, Mr. Allen is disqualified.[7]

Defendants' Motion to Compel (Paper No. 39) was filed on October 12, 1993. While the motion was pending, Judge Nickerson signed a modified scheduling order on October 15, 1993 (Paper No. 41). The modified scheduling order states in pertinent part: "No other discovery other than those matters set forth in this stipulation will be permitted, and all discovery must be completed on or before November 16, 1993, except as permitted in paragraph 3 above." The purpose of this order was to preclude additional discovery and time extensions except those listed in the order. Defendants' motion to compel with respect to Interrogatory No. 5 cannot be characterized as additional discovery in that it was originally requested on August 19, 1993. Therefore, the scheduling order was not intended to preclude an answer to Interrogatory No. 5.

Plaintiff is ordered to answer Interrogatory No. 5 and to produce documents identified in the answer. Plaintiffs have had notice of this interrogatory since August and they have not claimed that any hardship would result from answering it. For those reasons, the Court will exercise its discretion to permit this interrogatory, which is in excess of the number permitted by the Local Rules.

Defendants' request for leave to propound additional discovery requests will be denied. Defendants requested permission to pro-

pound additional interrogatories on October 12, 1993. This request came after discovery had ended and while a motion to extend discovery was pending before Judge Nickerson. Judge Nickerson gave extensions for limited purposes. It was entirely speculative on defendants' part to make the request at that time. Discovery is scheduled to be completed by November 16, 1993 with specific exceptions. Defendants give no compelling reason why at this late date already protracted discovery should be further extended to allow for these last minute additions.

Accordingly, for the foregoing reasons, it is this 17th day of November, 1993, by the United States District Court for the District of Maryland **ORDERED**:

1. That plaintiffs' Motion to Exclude Testimony of Defendants' Expert Witness (Paper No. 32) BE, and the same hereby IS, GRANTED;

2. That defendants' Motion to Compel (Paper No. 39) BE, and the same hereby IS, GRANTED IN PART AND DENIED IN PART;

3. That plaintiffs are to fully answer Interrogatory No. 5 within seven calendar days of the entry of this Memorandum and Order.

---

**7.** In light of this ruling, the Court will not discuss plaintiffs' contentions that Mr. Allen's proffered

testimony must be excluded as inadmissible legal opinion.