# Robert Reed v. John Glynn

[724 A.2d 464]

No. 97-468

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed December 18, 1998

*Claude T. Buttrey* of *Schuster, Buttrey & Wing, P.A.*, Lebanon, New Hampshire, for Plaintiff-Appellant.

*Potter Stewart, Jr.*, Brattleboro, and *William C. Saturley* and *Gordon J. MacDonald* of *Nelson, Kinder, Mosseau & Gordon, P.C.*, Manchester, New Hampshire, for Defendant-Appellee.

**Dooley, J.** Plaintiff Robert Reed appeals from an adverse judgment entered in the superior court on his claim of malpractice against defendant, John Glynn, the attorney who represented him at state expense in a probation revocation proceeding. Plaintiff argues that the trial court erred in determining that his exclusive right of action is against the state. We agree with the plaintiff and, accordingly, reverse.

The material facts are not in dispute. The defender general is responsible for providing legal services to indigent defendants either personally or through public defenders or other attorneys. See 13 V.S.A. § 5253. Defendant, a private attorney, contracted with the defender general to provide representation to indigent defendants in Windsor County in cases in which the public defender is disqualified by a conflict of interest or is otherwise not available.

Defendant's contract with the defender general included the following provisions:

> 7. **Supervision of Contractor.** The Defender General may not supervise or control in any way the representation of persons receiving legal services as defined in paragraph 1 of this agreement.
>
> 10. **Insurance.** Before commencing work on this contract the Contractor must provide the following minimum insur-

ance coverages. (a) Professional liability insurance for any and all services performed under this contract, with minimum coverage of $300,000.00 per occurrence. . . . . No warranty is made that the coverages and limits listed herein are adequate to cover and protect the interests of the Contractor for the Contractor's operations.

11. **Independence.** The Contractor, and any agents and employees of the Contractor, shall act in an independent capacity and not as officers or employees of the State.

Defendant was assigned to represent plaintiff in a probation revocation proceeding. After a contested hearing, the court found plaintiff had violated the conditions of his probation and sentenced him to serve three-to-five years in jail. Plaintiff was dissatisfied with defendant's representation in part because he did not explore a favorable plea agreement with the probation officer and the state's attorney. Plaintiff acquired new counsel who secured an agreement with the state's attorney that plaintiff would enter a substance abuse program and avoid incarceration. After spending thirty-seven days in prison, plaintiff was released.

After being released, plaintiff sued defendant in Windsor Superior Court for attorney malpractice. Defendant moved for summary judgment arguing that he was a state employee, and, as a result, plaintiff's exclusive remedy was to sue the State of Vermont. Relying on this Court's decision in *Bradshaw v. Joseph*, 164 Vt. 154, 666 A.2d 1175 (1995), in which we concluded that a client could not sue a public defender, the trial court granted the motion. We review a summary judgment decision using the same standard applied by the trial court; summary judgment is appropriate only when the materials before the court clearly show that there is no genuine issue of material fact and the party is entitled to a judgment as a matter of law. *Miller v. Town of West Windsor*, 167 Vt. 588, 588, 704 A.2d 1170, 1171 (1997).

On appeal, plaintiff argues that a private attorney, who represents indigent defendants at the state's expense pursuant to contract with the defender general, is not a state employee and is therefore amenable to civil malpractice liability. We agree.

The issue in this case is one of statutory interpretation. 12 V.S.A. § 5602 protects state employees from civil liability:

When the act or omission of an employee of the state acting within the scope of employment is believed to have caused damage to property, injury to persons, or death, the

exclusive right of action shall lie against the state of Vermont; and no such action may be maintained against the employee or the estate of the employee.

12 V.S.A. § 5602(a). For purpose of this section, the definition of "employee" contained in 3 V.S.A. § 1101 applies. *Id.* § 5602(c).

Both parties agree that § 5602(a) applies in this case. Indeed, plaintiff's injury in this case, the loss of liberty caused by incarceration, is the same as that in *Bradshaw*, where we held that the section applied and prevented a suit against a public defender. Therefore, the narrow question before us is whether defendant is a "state employee" as defined in 3 V.S.A. § 1101.

3 V.S.A. § 1101(b) defines a state employee to include "any elective or appointive officer or employee within the legislative, executive or judicial branches of state government or any former such employee or officer." In construing a statute, our goal is to give effect to the intent of the Legislature. See *Shea v. Metcalf*, 167 Vt. 494, 498, 712 A.2d 887, 889 (1998). When the language of a statute is clear and unambiguous, we must apply the plain meaning of the language used. See *id.* We construe the statute "according to the ordinary meaning of the words the legislature has chosen." *In re Villeneuve*, 167 Vt. 450, 458, 709 A.2d 1067, 1072 (1998).

The plain meaning of the statutory language supports plaintiff's position. Defendant was not an "elective or appointed officer or employee within [a branch] of state government." Defendant's contract specifically made him neither an "officer" nor "employee" of state government. The common law defines an employee as follows:

If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment. It is to be observed that actual interference with the work is unnecessary—it is the right to interfere that determines.

*Kelley's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 53, 113 A. 818, 820 (1921). Defendant's obligation was to provide representation of eligible defendants. By express provisions of the contract, the defender general had no power to control the means and methods by which such representation was provided. See also *Breslauer v. Fayston School Dist.*, 163 Vt. 416, 424, 659 A.2d 1129, 1134 (1995) ("essential element in the relationship of master and servant is the right of control"). Further, although it is not necessarily determinative, we note that the contract provided that the contract defender was not an officer or employee of the state and dealt with the consequences of that determination by requiring the contract defender to have malpractice insurance in force. See Restatement (Second) of Agency § 220(2)(i) (1958) (a factor in determining whether a master and servant relationship is created is whether the parties believe they are creating that relationship).

Despite the statutory language, defendant argues, and the trial court accepted, that *Bradshaw* controls this case and requires that we rule that defendant is a state employee. The defendant in *Bradshaw* was an employee of the defender general who received a salary from the state. Nevertheless, the malpractice plaintiff argued that the public defender should not be considered a state employee for purposes of § 1101 because the defender "is responsible only to his client" and is not "under the control of a supervising official of the state." *Bradshaw*, 164 Vt. at 157, 666 A.2d at 1177. We held that these considerations could not control in the face of the wording of the statute. See *id.* at 158, 666 A.2d at 1178. We went on to discuss the policy considerations behind the statute, concluding that immunity "may actually promote a vigorous and independent defense." *Id.* at 157, 666 A.2d at 1178.

As defendant emphasizes, we stated in *Bradshaw* that we looked "at the origin, function and source of funding of a public defender position" to hold that a public defender is a state employee. *Id.* at 155, 666 A.2d at 1176. Defendant argues that if we look at the origin, function and source of funding of conflict counsel, we must reach the same conclusion. We disagree.

In *Bradshaw*, plaintiff was arguing that a lawyer who was an employee of the state for all other purposes was somehow not a state employee for purposes of 3 V.S.A. § 1101. In this case, defendant is arguing that a lawyer who is not a state employee for any other purpose is somehow a state employee for purposes of § 1101. Both arguments fail for the same reason. The statutory language controls and defines state employee in accord with its ordinary meaning.

As did the plaintiff in *Bradshaw*, defendant in this case relies on a public policy argument, albeit the reverse of the *Bradshaw* argument. In this area of conflicting considerations, the choices are fundamentally for the Legislature. We conclude that the Legislature has spoken and has not extended immunity to defendant.

*Reversed.*