Erwin J. LARSON and Ruth
E. Larson, Plaintiffs,

v.

Patrick J. ROURICK, Defendant.

No. C01–2073.

United States District Court,
N.D. Iowa,
Eastern Division.

Sept. 27, 2003.

Vernon Pellett Squires, Bradley & Riley, Cedar Rapids, IA, for Plaintiffs.

Patrick M. Roby, Elderkin Law Firm, Cedar Rapids, IA, for Defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to defendant's September 4, 2002, motion for extension of time to designate experts (docket number 13). In the resistance filed September 13, 2002, plaintiffs moved to disqualify defendant's expert, Carroll Reasoner. The court held a hearing on the motion to disqualify Ms. Reasoner on September 23, 2002. The motion for extension of time is granted. The motion to disqualify is denied.

This is an attorney malpractice action in which the defendant is alleged to have committed malpractice by failing to perfect a security interest when the Larsons sold Red's Ag Service, Inc. to Eric and Norma Wilson in 1995.

In February 2002, counsel for plaintiffs, Vernon Squires, called Attorney Wesley Huisinga at the Shuttleworth & Ingersoll law firm in Cedar Rapids concerning Mr. Huisinga's willingness to serve as an expert witness. Mr. Huisinga was initially receptive to the proposal and indicated that he would charge $180 for such services. Mr. Squires discussed the matter

with Mr. Huisinga on one occasion and sent him some documents including a joint pretrial statement from the Red's Ag Service bankruptcy for Mr. Huisinga to review. Within a week, however, Mr. Huisinga and Mr. Squires had another conversation in which it was determined for strategic reasons that Mr. Huisinga would not serve as plaintiffs' expert. Mr. Huisinga returned the documents. Because he did not perform services for the plaintiff, he did not submit a bill or enter this arrangement in the firm's computer for conflict checking purposes.

Counsel for plaintiff later called Dean Einck of the Shuttleworth & Ingersoll law firm to inquire whether he would be willing to serve as an expert for the plaintiff. Mr. Einck considered the matter for a very short time and determined that he did not want to serve as an expert for the plaintiff in a malpractice action. Plaintiff received an extension of time to designate expert witnesses on March 8, 2002, and hired attorney Mark McCormick to serve as plaintiffs' expert. A designation concerning Mr. McCormick's testimony was filed in this matter on May 16, 2002 (docket number 12).

Shortly after plaintiffs' designation was filed, counsel for the defendant contacted Carroll Reasoner of the Shuttleworth & Ingersoll firm. By letter dated June 4, 2002, Mr. Roby thanked Ms. Reasoner for agreeing to review the matter and enclosed pleadings, discovery, depositions, interrogatories, and Mr. McCormick's opinions. Both experts have substantial qualifications including Mr. McCormick's past service as a member of the Iowa Supreme Court and Ms. Reasoner's past service as President of the Iowa Bar Association.

The plaintiffs moved to disqualify Ms. Reasoner contending that their contacts with Mr. Huisinga and Mr. Einck disqualify Ms. Reasoner from serving as an expert in this case. Federal courts have the inherent power to disqualify experts. *Koch Refining v. Boudreaux,* 85 F.3d 1178 (5th Cir.1996); *Cordy v. Sherwin–Williams Co.,* 156 F.R.D. 575 (D.N.J. 1994); *W.R. Grace & Co. v. Gracecare, Inc.,* 152 F.R.D. 61 (D.Md.1993). That power derives from the necessity to protect privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings. *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271 (S.D.Ohio 1988).

In disqualification cases other than those in which the expert clearly switched sides, lower courts have rejected a "bright-line" rule and have adopted the following test:

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed? Second, was any confidential or privileged information disclosed by the first party to the expert?

*Koch Refining, supra,* at 1181 (citing *Mayer v. Dell,* 139 F.R.D. 1 (D.D.C.1991)). Only if the answers to both questions are affirmative should the witness be disqualified. Many courts have considered a third element: the public interest in allowing or not allowing an expert to testify. The party seeking disqualification bears the burden of proving these elements. *Koch Refining, supra,* at 1181.

In determining whether it was objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed, courts have found such a relationship to exist when the record supports a long-standing series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, pattern of operations, decision-making process, and the like.

*Koch Refining, supra,* at 1182 (citing *Marvin Lumber Co. v. Norton,* 113 F.R.D. 588, 591 (D.Minn.1986)). Where the expert met once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services, courts have found that the evidence supports the finding that the meeting was a type of informal consultation rather than the commencement of a long-term relationship. *Koch Refining, supra,* at 1182.

The court must next determine whether the expert received or had reasonable access to confidential information. Such information would include discussion of the retaining party's strategies in the litigation, the kinds of experts who are expected to be retained, the party's views of the strength and weaknesses of each side, the role of each of the witnesses to be hired, and anticipated defenses. Purely technical information is not confidential. *Koch Refining, supra,* at 1182. Courts also balance competing policy objectives in determining expert disqualification. The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. *Koch Refining, supra,* at 1182.

As stated in *Koch Refining,*

■ The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party. Accordingly, courts have considered whether another expert is available and whether the opposing party had time to hire him or her before trial.

*Koch Refining, supra,* at 1183. There is no allegation in this case that the plaintiffs attempted to hire Shuttleworth & Ingersoll attorneys in an attempt to prevent Ms. Reasoner from testifying for the defendant. Similarly, there is no evidence that Mr. Huisinga or Mr. Einck ever discussed these matters with Ms. Reasoner.

The plaintiffs cite *Cordy v. Sherwin–Williams Co.* in support of their motion for disqualification. *Cordy* is distinguishable for the following reasons. First, Cordy was an expert who tried to change sides in the litigation. He was paid $3,000 and a three-ring binder was delivered to him including plaintiff's impression of the case, a police report, witness interview, summary memorandum photographs, and an engineering report of another expert. After performing 27 hours of work for the plaintiff and rendering an oral opinion concerning the cause of the accident, the expert resigned and returned his $3,000 retainer. He then went to work for the defendant.

Although the expert in *Cordy* was not an attorney, the court specifically stated that the expert disqualification standard must be distinguished from the attorney-client relationship because experts perform very different functions in litigation than attorneys. *Cordy, supra,* at 580. Because of the different functions, the standards and presumptions applicable to the attorney-client relationship have little bearing on an expert's disqualification. *Id.See also W.R. Grace & Co. v. Gracecare, Inc.,* 152 F.R.D. 61, 65 (D.Md.1993).

The case most supportive of plaintiffs' position is *W.R. Grace & Co. v. Gracecare,*

*Inc., supra.* In that case, counsel for the plaintiff telephoned a nationally recognized trademark attorney and publisher of a trademark digest in an attempt to retain him for particular trademark litigation. He was asked in that conversation whether he had a conflict of interest with defendant Gracecare. When he responded that he did not, plaintiff described its trademark litigation against the defendant. The issues were discussed including the possibility and appropriateness of expert testimony as well as some of the arguments that the defendants were making. The discussion included a disclosure of counsel's thoughts on certain issues related to the case. The expert billed and was paid for this advice. Although there was a factual dispute as to whether the expert received confidential communications from the record, the court was able to find that there was a reasonable probability that the expert received confidences about his proposed strategic role at trial. "He in turn became the very attorney-expert that plaintiffs anticipated rebutting." The court determined that all doubts should be resolved in favor of disqualification to avoid the appearance of impropriety and to preserve the integrity of the proceeding. Accordingly, the expert was disqualified.

The *Koch Refining* case is the most authoritative case on point. In the matter now before the court, the record supports a finding that the consultation between Mr. Squires and Mr. Huisinga was a type of informal consultation rather than the commencement of a long-term relationship. The court does not know what documents other than the bankruptcy pretrial statement were sent to Mr. Huisinga. However, it is clear that Mr. Huisinga quickly came to the conclusion that he did not want to accept employment as an expert, did not enter this relationship into

the law firm computer for conflict checking purposes, and did not form or render opinions.

The court concludes that Mr. Squires contacted Mr. Huisinga, gave him a brief description concerning the litigation, and asked whether Mr. Huisinga would be willing to consider formulating expert opinions for the plaintiffs. To get to the point where an attorney expert is comfortable proceeding to the step of reviewing factual information, the plaintiffs' counsel must necessarily reveal certain basic facts and theories concerning the litigation. It was in this very initial stage that Mr. Huisinga was called, considered, and then declined the employment. The subsequent retaining of Ms. Reasoner under these circumstances does not lead the court to believe that there is an actual conflict of interest or the appearance of impropriety.

Upon the foregoing,

IT IS ORDERED

That defendant's September 4, 2002, motion for extension of time to designate experts (docket number 13) is granted. The defendant's September 16, 2002, expert witness disclosure is deemed timely filed. The plaintiffs' September 13, 2002, motion to disqualify Ms. Reasoner (docket number 14) is denied.