Haner v. State, No. 290-7-07 Bncv (Wesley, J., May 12, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**  **BENNINGTON SUPERIOR COURT**
**BENNINGTON COUNTY**  **DOCKET No. 290-7-07 Bncv**


| | |
|---|---|
| **HAROLD HANER** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **STATE OF VERMONT** | ) |


## ORDER DENYING STATE'S MOTION TO PRECLUDE PETITIONER'S EXPERT

**Introduction**

By his complaint for post-conviction relief pursuant to 13 V.S.A.§7131, Petitioner Harold Haner seeks to set aside his conviction for sexual assault on a minor by alleging ineffective assistance of counsel. He asserts that trial counsel's performance was deficient in several ways, including the failure to obtain an independent medical examination of the complaining witness, A.H. Petitioner has retained Darah Kehnemuyi, Esq., to render an opinion regarding trial counsel's performance. In an affidavit dated December 29, 2008, Mr. Kehnemuyi opined that Petitioner's defense attorney should have retained a medical expert to review A.H.'s records and conduct a physical exam, and that failure to do so amounted to ineffective assistance of counsel.

The State moves to exclude Mr. Kehnemuyi's testimony claiming that he is disqualified due to a conflict of interest under the Vermont Rules of Professional Conduct. This claim stems from the commencement of concurrent juvenile and criminal proceedings against Petitioner, resulting from A.H.'s allegations. A.H. was represented in the juvenile proceeding by Marie Wood, Esq., of the Bennington County Public Defender's Officer. Although never having sought, nor obtained, assignment to represent

A.H. in the criminal case, Ms.Wood accompanied her Family Court client to A.H.'s deposition scheduled by defense counsel in the sexual assault prosecution. Subsequently, from March 1, 2009 through June 30, 2009, Mr. Kehnemuyi had a "caseload relief contract"[1] with the Defender General under which he covered arraignments in Windham County on a rotating schedule with attorneys from the Windham County Public Defender's Office.[2] By the terms of the contract, on those days specified by the Public Defender's rotation schedule, Mr. Kehnemuyi appeared in Windham District Court as the sole Public Defender to be assigned to eligible defendants, and remained responsible for each case to which he was assigned at such arraignments until resolution.

**Legal Framework**

The State argues that Mr. Kehnemuyi has a conflict of interest under V.R.Pr.C. 1.9 and 1.10 that requires him to be disqualified as an expert in this case.[3] The State

---

[1] Mr. Kehnemuyi also has an "assigned counsel contract" with the Defender General to provide services when attorneys in the Windham County Public Defender's Office have a conflict. The State does not contend that this contract creates any conflict affecting his role as an expert for Petitioner in this case.

[2] The terms of the caseload relief contract do not indicate that it is specific to Windham County. However, the Defender General testified that this was a county-specific contract, entered due to the extended personal leave of an attorney in the Windham County Public Defender's Office and the need avoid adding all new cases coming in to the caseloads of the remaining staff. Mr. Kehnemuyi also testified that, under the contract, he covered arraignments in Windham County District Court, and the State's motion also indicates that the caseload relief services were performed in Windham County only.

[3] The State's standing to move for Mr. Kehnemuyi's disqualification is suspect. Generally, to raise conflict of interest as a basis for disqualification, there must have been an attorney-client relationship between the party moving for disqualification and the party to be disqualified. *Morgan v. N. Coast Cable Co.* 586 N.E.2d 88, 90-91 (Ohio 1992) ("[A]s a general rule, a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship."); see also *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976); *Murchison v. Kirby*, 201 F.Supp. 122, 124 (S.D.N.Y. 1961) ("Absent a complaint by the former or present client the moving party has no status to object to the representation of the adverse party by an attorney of his choice."). However, some courts have recognized exceptions to this rule where the moving party has a sufficient interest in the outcome of the case or the integrity of the judicial proceedings. See *United States v. Cunningham*, 672 F.2d 1064, 1072 n.7 (2d Cir. 1982) (state has a sufficient interest in maintaining the integrity of criminal proceedings to raise conflict of interest as grounds for disqualifying defense counsel who had previously represented one of the state's witnesses); *In re Gopman*, 531 F.2d 262, 265–66 (5th Cir. 1976) (government has standing to disqualify attorney for defendant because all attorneys have obligation to bring violations of ethics rules to the court's attention); *State Farm Mut. Auto. Ins. v. K. A. W.,* 575 So.2d 630, 632–33 (Fla. 1991) (allowing insurer to

2

asserts that since V.R.Pr.C. 1.9 would prevent Ms. Wood from offering an opinion for Petitioner that is adverse to the interests of her former client, and, because Mr. Kehnemuyi provides public defense services under a contract with the Defender General, therefore he is "associated in a firm" with Ms. Wood such that her conflict is imputed to him under V.R.Pr.C. 1.10.[4]

Where a lawyer is providing services to an organization on a temporary basis, "[w]hether Rule 1.10 requires imputed disqualification must be determined case by case on the basis of all relevant facts and circumstances, unless disqualification is clear under the Rules." ABA Formal Op. 88-356 (Dec. 16, 1988). Given the circumstances in this case—Mr. Kehnemuyi is appearing as an expert, not an advocate; his opinion was formed prior to entering the contract with the Defender General; Mr. Kehnemuyi is not an employee of the Defender General or any public defender; and Mr. Kehnemuyi and Ms. Wood provided services in separate county public defender offices—the Court concludes

stand in shoes of insured for purpose of asserting conflict of interest where it would be liable for verdict against insured).

The Vermont Supreme Court recently addressed a motion to disqualify for conflict of interest raised by a party outside the attorney-client relationship. *State v. Baker*, 2007 VT 84, 182 Vt. 583. In that case, the defendant moved to disqualify the prosecuting attorney, who had previously represented the co-defendant on unrelated criminal charges. *Id*. at ¶¶ 1, 3. The Court analyzed the substance of the motion, without addressing whether the defendant had standing to raise it. However, it did note that the language of V.R.Pr.C. 1.9 would prevent the prosecutor from representing the state against his former client, the co-defendant, but that here the rule was being used in an attempt to prevent representation against a person other than the former client. Id. at ¶ 7 ("Rule 1.9 must be viewed with this important distinction in mind.").

Guided by *Baker*, as well as the authorities recognizing some latitude in the State's role in seeking clarification of seeming conflicts of interest, the Court reaches the merits of the claim here. Nevertheless, especially in light of the concerns raised below regarding the strength of the State's challenge, it bears noting that the State *does not* represent A.H.; rather, it has an independent duty to assure the preservation of justice. Its collateral attack on Defendant's ability to present expert testimony in support of his claim of ineffective assistance of counsel – justified by insisting that the success of such a challenge "would not be in the interest of A.H." – betrays a disquieting disregard for the possibility that other responsibilities could be paramount to the State's solicitude for a complaining witness, even one who is a minor having endured the grueling experience of giving testimony in a sexual assault prosecution.

[4] Rule 1.10 states clearly that any disqualification of lawyers "associated in a firm with former or current government lawyers is [exclusively] governed by Rule 1.11." V.R.Pr.C. 1.10(d), cmt 7. However, Rule 1.11 only seems to control where a private lawyer has joined a government entity, or a government lawyer has left public service to join a private firm. See V.R.Pr.C. 1.11 and comments. Since neither scenario is present here, as the parties have done, the Court will analyze disqualification in this case under Rule 1.10.

that the alleged conflict is too attenuated to require disqualification of Mr. Kehnemuyi as Petitioner's expert. See *State v. Baker,* 2007 VT 84, ¶ 8, 182 Vt. 583 (mem.) ("[T]he appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order except in the rarest of cases." (quoting *Stowell v. Bennett,* 169 Vt. 630, 632 (1999) (mem.)).

At the outset, it must be noted that this is a motion to preclude Mr. Kehnemuyi as an expert; he has not been engaged to provide legal representation to Petitioner in these post-conviction relief proceedings. In the absence of any Vermont case law setting forth a standard for expert disqualification based on a conflict of interest, the Court looks to the law of other states. Typically, to disqualify an expert because of a conflict of interest the moving party must demonstrate that (1) it had a reasonable expectation of a confidential relationship with the expert and (2) that actual confidences were divulged to the expert. *Mitchell v. Wilmore*, 981 P.2d 172, 175 (Colo. 1999); *Formosa Plastics, Inc. v. Kajima Intern, Inc.* 216 S.W. 3d 436, 448 (Tex. App. 2006). This test was adapted from the test for disqualifying conflicted attorneys to require proof that confidential communications actually occurred, thus creating a higher burden for disqualification of experts.[5] See *Mitchell,* 981 P.2d at 175–76. This higher hurdle for expert disqualification is meant to recognize the difference in the role of an expert (source of technical information and neutral opinions for the trier of fact) and the role of an attorney (zealous advocate of client's cause). *Id.*

Interestingly, there is little case law regarding the standard to apply when the expert *is an attorney.* The Court could locate only one case on this point, *W.R. Grace &*

---

[5] To prove an attorney conflict, a party need only demonstrate the existence of an attorney-client relationship that is substantially related to the present matter. See *State v. Crepeault,* 167 Vt. 209, 216 (1997). Once those facts are established it is presumed that confidential information passed. *Id.*

4

*Co. v. GraceCare Inc.,* which itself notes the absence of other cases considering the issue. 152 F.R.D. 61, 64 (D.Md 1993). In *W.R. Grace*, the plaintiff sought to disqualify defendant's expert, Mr. Allen, a trademark attorney, where plaintiff had previously contacted Mr. Allen as a potential expert witness for the same case. *Id.* at 64–65.

In considering what test to use for the attorney-expert's disqualification, the Court said that even though Mr. Allen was contacted as an expert, it could not ignore that he is an attorney and "the duties of an attorney-expert are greater than the ordinary expert." *Id.* at 65. The expert's status as an attorney creates an assumption that any contact with him took on a confidential character. *Id.* Therefore, the Court concluded it was appropriate to apply the traditional conflict-of-interest analysis that would be used when the attorney was appearing as an advocate— that is, where there is a confidential relationship with an attorney-expert, the court need only look for the "reasonable probability" that confidences have passed. *Id.* This Court accepts the logic of the Federal District Court of Maryland in *W.R. Grace*, that whether an attorney is appearing as an expert or an advocate, her position as an attorney dictates the ethical standards to which she must be held. Therefore, the Court will apply the traditional test for attorney conflicts under the Vermont Rules of Professional Conduct to this motion to preclude an attorney-expert.

Mr. Kehnemuyi's appearance as an expert in this case creates no direct conflict with any current or former client of his as he was not involved in the underlying criminal or juvenile proceedings. Thus, he can only be disqualified if he is "associated in a firm" with a lawyer whose conflict with a current or former client would prevent them from personally appearing as an expert in this case. See V.R.Pr.C. 1.10(a) ("While lawyers are

associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9. . . .").

In this case, deputy public defender Marie Wood represented the complaining witness A.H. in juvenile proceedings stemming from the same events as the underlying criminal charges against Petitioner. Under Rule 1.9, because of her former representation of A.H., Ms. Wood would be prevented from now representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent." V.R.Pr.C. 1.9. Petitioner's interest in setting aside his conviction for sexual assault on A.H. is certainly adverse to her interests in having her assailant imprisoned, and A.H. has not consented to Ms. Wood or Mr. Kehnemuyi testifying for Petitioner.

The only real issue regarding Ms. Wood's conflict is whether the juvenile proceedings and the present action for post-conviction relief are substantially related. Where a substantial relationship between the first and second representation is shown, receipt of confidential information relevant to the second matter is presumed and disqualification is required. See *State v. Crepeault,* 167 Vt. 209, 216–17 (1997). "Substantiality is present if the factual contexts of the two representations are similar or related." *State v. Baker,* 2007 VT 84, ¶ 11 (quoting *Crepeault,* 167 Vt. at 216). This determination "requires an analysis of the facts, circumstances, and legal issues of the two representations." *Id.*

The legal issues and circumstances of the two representations in this case are very different. In the juvenile proceeding, Ms. Wood's role was to advocate for the best interests of A.H. In this matter, the attorney's task is to offer expert testimony regarding

6

the performance of defense counsel at Petitioner's trial. The present representation concerns the way the court works, and seeks to ensure that a defendant's constitutional rights are protected; though it may indirectly affect A.H., the present case is not about her best interests. However, there may be sufficient factual similarity between the two that confidences obtained in the juvenile case could be implicated in an expert opinion regarding the need for a medical examination of A.H.

The situation here is similar to that in *State v. Crepeault*. There the attorney prosecuting Ms. Crepeault for sexual assault on one of her children had previously defended Ms. Crepeault in a juvenile CHINS proceeding regarding her ability to care for her children. *Crepeault,* 167 Vt. at 214–15. Though the circumstances and legal issues in the two proceeding were different, the Court still determined that there was enough factual similarity between the two representations to warrant disqualification of the prosecuting attorney.

> "The subject matter of [the prosecutor's] prior representation of defendant in the CHINS proceeding concerned defendant's parenting abilities and her relationships with [her children]. In the course of that representation, [the prosecutor] could have been privy to any number of client confidences concerning defendant's treatment of the children. Although the immediate focus of the criminal prosecution focused specifically on defendant's alleged sexual abuse of J.C., it also involved underlying questions relating to the nature of her relationships with all of her children and the extremely troubled family dynamics."

*Id.* at 217. Likewise, in the course of her representation of A.H., Ms. Wood presumably learned details of the assault and A.H.'s physical condition that could be relevant in an opinion as to whether an independent medical exam should have been performed on A.H. Even Mr. Kehnemuyi acknowledged that if he were in Ms. Wood's position, he would be "uncomfortable" offering testimony in the present case. It is likely that the two matters

7

are sufficiently related that it would be a conflict under Rule 1.9 for Ms. Wood to now offer expert testimony in favor of Petitioner.

**Association in a Firm**

Nevertheless, Mr. Kehnemuyi is subject to imputed disqualification only if he is "associated in a firm" with Ms. Wood—it is here that the State's argument fails. A "firm" is "lawyers in a law partnership, professional corporation, sole proprietorship or other entity or association authorized to practice law; or lawyers employed in a legal services organization . . . ." V.R.Pr.C. 1.0(c). Government-run legal organizations are not expressly included in this definition, though the comments suggest that a public defender organization may be treated as a legal services organization. See V.R.Pr.C. 1.0 cmt 4. Thus, assuming for the moment that a public defender's office is a firm under the rule, to be subject to disqualification, Mr. Kehnemuyi would have to be employed by the public defender's office when he rendered the opinion in this case.

Mr. Kehnemuyi performed caseload relief services for the Windham County Public Defender's office pursuant to a contract with the Defender General. The Vermont Supreme Court has explicitly stated that "a private attorney who represents indigent defendants at the state's expense pursuant to contract with the defender general is *not a state employee.*" *Reed v. Glynn,* 168 Vt. 504, 505 (1998) (emphasis added). Though the particular concern in that case was whether the contract attorney was a state employee for the purposes of sovereign immunity, the Court applied the common law definition of employee: if, under the contract, the party for whom the work is being done controls only the result, and party performing the services can choose the means and methods to accomplish that result, then he is not an employee. *Id.* at 506. The Court concluded,

8

given the express provisions of the contract that "the defender general had no power to control the means and methods by which such representation was provided," and therefore the private attorney was not an employee. *Id.* at 507.

Though the agreement at issue in *Reed* was a contract for conflict counsel, the provisions relied on by the Court in reaching its decision—7 (defender general does not supervise or control contractor), 10 (contractor maintains own liability insurance), and 11 (contractor acts in independent capacity not as officer or employee of the state)—are identical to the provisions in Mr. Kehnemuyi's caseload relief contract.[6] Mr. Kehnemuyi's status as an independent contractor is further supported by his testimony, as well as that of the Defender General, that Mr. Kehnemuyi is responsible for maintaining his own office and malpractice insurance, he does not have a key to the public defender's office or access to his files, and the details of his representation are not supervised by the Defender General. Thus, while carrying out his responsibilities for "caseload relief" in aid of the Windham County Public Defender's Office, Mr. Kehnemuyi is an independent contractor for the Defender General—he is not an employee.

The Court acknowledges that it is possible for an independent contractor to be associated with a firm for the purpose of imputing a conflict of interest; however the circumstances of this case do not support such a conclusion. Whether a temporary

---

[6] *Compare* provisions quoted in *Reed v. Glynn,* 168 Vt. at 504-05, *with* the following provisions in Mr. Kehnemuyi's contract:
7. **Supervision of Contractor**. The Defender General may not supervise or control in any way the representation of persons receiving legal services as defined in paragraph 1 of this agreement. . . .
10. **Insurance**. Before commencing work on this contract the Contractor must provide the following minimum insurance coverages. a) Professional liability insurance for any and all services performed under this contract, with minimum coverage of $300,000.00 per occurrence . . . ..No warranty is made that the coverages and limits listed herein are adequate to cover and protect the interests of the Contractor for the Contractor's operations. . . .
11. **Independence.** The Contractor, and any agents and employees of the Contractor, shall act in an independent capacity and not as officers or employees of the State.

contract attorney is associated with a firm "must be determined by a functional analysis of the facts and circumstances involved in the relationship between the temporary lawyer and the firm. . . .", particularly whether there is access to confidential information of the firm.  ABA Formal Op. 88-356 *Temporary Lawyers*.

> Ultimately, whether a temporary lawyer is treated as being "associated with a firm" . . . depends on whether the nature of the relationship is such that the temporary lawyer has access to information relating to the representation of firm clients other than the client on whose matters the lawyer is working . . . .  For example, a temporary lawyer who works for a firm, in the firm office, on a number of matters for different clients, under circumstances where the temporary lawyer is likely to have access to information relating to the representation of another firm clients, may well be deemed to be "associated with" the firm generally under Rule 1.10 as to all other clients of the firm, unless the firm can demonstrate [limited access].  If such limited access can be demonstrated then the temporary lawyer should not be deemed to be associated with the firm under Rule 1.10."

*Id.*

It is clear that Mr. Kehnemuyi had no access to confidential information in the Windham County Public Defender's office, let alone the Bennington County office.  Pursuant to the contract, Mr. Kehnemuyi maintained his own office and worked from there; he did not have a key to the public defender's office or access to its files, even for the purposes of conflict checking; he did not work on matters in conjunction with other attorneys in the public defender's office but had sole responsibility to see the cases he picked up on arraignment through to completion.  Moreover, he did not enter the caseload relief contract until March 1, 2009, months after he initially offered an opinion in this case in December 2008.  And the contract ended on June 30, 2009, before Mr. Kehnemuyi has actually been

called to testify.[7] The Court concludes that Mr. Kehnemuyi was not employed by or associated with the public defender's office such that any conflict could be imputed to him under Rule 1.10, even assuming that the Bennington County Public Defender's Office and the Windham County Public Defender's Office are properly considered one firm for the purposes of imputed disqualification.

**State-Wide Public Defender System as a Firm**

Though not necessary to the conclusion just stated, the Court deems it prudent to address the State's contention that all public defender's offices should be treated as one state-wide firm. Of the cases the State cites in support of the "one firm" theory, none actually hold that all regional public defender's offices under the authority of a state public defender or defender general are one firm for purposes of the Rules of Professional Conduct. The closest holding is *State v. Veale*, 919 A.2d 794 (N.H. 2007), which concludes that the Office of the Public Defender and the Office of the Appellate Defender are one firm for the purposes of the Rules of Professional Conduct, given the structure of those offices and "their close, and often overlapping, personnel and functions," including the sharing of confidential information. *Id.* at 796–97. Though *Veale* focuses on whether the public defender and appellate defender are one firm, the Court also noted, without discussion, that it is "obvious that the appellate defender and the public defender are, individually, legal services organizations that qualify as firms." *Id.* at 796.

Yet, given the significant difference between the New Hampshire public defender system and the Vermont public defender system, this conclusion is not so obvious in Vermont. The New Hampshire public defender's office is a *private nonprofit*

---

[7] At the time of the hearing on the State's motion, Mr. Kehnemuyi still was engaged on behalf of a few clients who were arraigned between March 1 – June 30, 2009, and whose cases had not yet resolved.

*corporation* that provides representation of indigent defendants through county offices, under a contract with the state. See http://www.nhpd.org/employment.htm. It is not a state-run defense organization like the Vermont system. As a private legal organization, the New Hampshire public defender system is arguably a "firm" under the plain language of the Rules of Professional Conduct. See V.R.Pr.C. 1.0 (c); 1.10 cmt 1. But however the New Hampshire Supreme Court justified its conclusion that the public defender's office is "obviously" one firm, this Court is not persuaded that the same result pertains in Vermont.

Nor do the other cases cited by the State go so far as to hold that all regional offices under the supervision of a state public defender are one firm. Rather, these courts conclude that public defenders in the same *regional office or judicial circuit* should be considered a "firm" in which the conflict of one attorney is automatically imputed to other members of the office. See *Okeani v. Sup. Ct. Maricopa Co.,* 871 P.2d 727, 729 (Ariz. Ct. App. 1993) (conflict is not relieved by substituting attorney from same county public defender's office for conflicted attorney); *Ward v. State*, 753 So. 2d 705, 708 (Fla. Dist. Ct. App. 2000) (all branch offices of public defender of particular judicial circuit are "firm" for purpose of rules of professional conduct); *Perkins v. State*, 487 S.E.2d 365, 368 (Ga. Ct. App. 1997) ("[F]or purposes of ineffective assistance claims, public defenders in the same [county] office are treated as members of a law firm."); *State v. Watson*, 620 N.W. 2d 233, 241 (Iowa 2000) (conflict imputed to members of same county public defender's office); *Jackson v. State*, 495 S.E. 2d 768, 773 ( S.C. 1989) (noting potential conflict of interest when attorneys in same county public defender's office represent co-defendants); *In re Saladin,* 518 A.2d 1258, 1260 n.4 (Pa. Super. Ct.

12

1986) ("Even the representation of two clients by different attorneys employed by the same Defender Association constitutes dual representation for the purpose of conflict of interest analysis."); see also *Duvall v. State,* 923 A.2d 81, 95 (Md. 2007) ("[E]ach district office of the public defender should be treated as a private law firm for conflict of interest purposes."). Like the New Hampshire Supreme Court, these states simply declare that the public defender's office should automatically be treated the same way as a private firm for the purposes of imputing conflicts of interest, without engaging any analysis of the Rules of Professional Conduct or the policy reasons that would support treating a government legal services agency the same as a private law firm.

On the other hand, states that have declined to automatically consider regional public defender's offices as one firm couch their analysis with reference to the function of a government agency providing public defense services, and the implications of treating them the same as private firms. See e.g. *State v. Severson,* 215 P.3d 414, 426–27 (Idaho 2009); *Bolin v. State*, 137 P.3d 136, 145 (Wyo.2006). These cases do not rule out the possibility that a regional office of the public defender could be treated as one firm for conflict purposes;[8] they simply decline to automatically treat the office as one firm but instead determine on a case by case basis whether a there is a potential conflict and a likelihood of prejudice that would require that the conflict be imputed to all attorneys in an office. See *People v. Daniels,* 802 P.2d 906, 915 (Cal. 1991) ("[A] rule of automatic disqualification is unnecessary, and would hamper the ability of public defenders' offices to represent indigents in criminal cases."); *State v. Pitt,* 884 P.2d 1150, 1156 (Haw. Ct. App.1994) (rejecting per se disqualification of public defender office in favor of case

---

[8] These cases also focus only on whether attorneys in the same county or regional public defender's office should be treated as one firm—there is no discussion of all public defenders being one state-wide firm.

13

specific determination); *State v. Severson,* 215 P.3d 414, 426 (Idaho 2009) (adopting

case-by-case conflict analysis instead of automatic disqualification rule); *People v.*

*Robinson,* 402 N.E.2d 157, 162 ( Ill.1979) (declining to adopt a per se rule that

"individual attorneys who comprise the staff of a public defender are members of an

entity which should be subject to the rule that if one attorney is disqualified by reason of

a conflict of interest then no other member of the entity may continue with the

representation"); *State v. Bell,* 447 A.2d 525, 528 (N.J. 1982) (approving rejection of per

se disqualification in favor of showing conflict case by case); *Bolin v. State*, 137 P.3d

136, 145 (Wyo.2006) ("Wyoming has not adhered to a per se disqualification rule for

assistant district attorneys or public defenders when a conflict of interest is alleged.").[9]

These cases recognize essential differences between private firms and

government-run defense services that counsel against automatically disqualifying an

entire public defender's office. First, due to the nature of a public defender's role in the

defense of an individual client in a criminal matter, including the absence of any financial

obligations to the firm owed by the client, neither most defendants entitled to assigned

counsel, nor the public at large, are likely to view the potential for imputed conflicts

similarly to those that might arise from relationships with law firms engaged in private

practice. See *Severson,* 215 P.3d at 426–27; *Bolin,* 137 P.3d at 145.  Second, and perhaps

---

[9]  The State attempts to distinguish these cases as irrelevant because the public defender systems in those states operate independently within counties, rather than under the supervision of a state office of the public defender as in Vermont.  However, a closer look reveals that several of the states declining to apply a per se rule of disqualification—Hawaii, New Jersey, Wyoming—actually have a state public defender system. See Haw. Rev. Stat. §§ 802-8–802-12, N.J. Stat. Ann. § 2A:158A-1 et seq, Wyo. Stat. Ann. § 7-6-103. Conversely, at least two states that automatically treat a public defender's office as a firm—Iowa and Maryland—also have state public defender systems.  See Iowa Code §§ 13b.1–.10; Md. Code. Ann., Crim. Proc. §§ 16-202, -203, -207.  While the structure of the state public defender system may play some role in the conflict analysis, the Court is not convinced that the existence of a state public defender mandates that all regional offices supervised by that authority be treated as a single firm.

14

more importantly, "a rule of automatic disqualification would significantly hamper the [public defender's] ability to provide legal representation of indigent clients." *Severson,* 215 P.3d at 426; see also *People v. Daniels,* 802 P.2d 906, 915 (Cal. 1991). This rationale is particularly convincing in a rural state like Vermont where relatively few public defenders serve a relatively large client base. The test applied by courts taking a case-by-case approach is "whether the circumstances demonstrate a potential conflict of interest and a significant likelihood of prejudice. If so, there is a presumption that both an actual conflict of interest and actual prejudice will arise" and the conflict should be imputed to the entire office. *Severson,* 215 P.3d at 426 (citations omitted).

In the absence of any Vermont case law considering whether a public defender's office should be treated as a firm, this Court finds compelling the rationale of the case-by-case approach as the best way to balance access to legal services with a client's right to conflict-free counsel. See *Severson,* 215 P.3d at 426 ("Analyzing conflicts within a public defender's office on a case-by-case basis permits flexibility and ensures that indigent defendants receive adequate representation. At the same time, it protects defendants who would otherwise be prejudiced by a public defender's conflict of interest."). Under the circumstances of this case, the application of this approach would not disqualify Mr. Kehnemuyi as an expert, even if he had been considered a temporary employee of the Windham County Public Defender's Office. He is not actually representing a person adverse to the former client, but is offering an expert opinion. Any potential conflict did not exist at the time his opinion was formed because he did not enter the caseload relief contract until months later. In performing services under the contract, he was not supervised by the public defender's office or the Defender General,

15

nor did he have access to confidential information in the Windham County Public Defender's Office, whom the services were performed for, let alone the Bennington Public Defender's Office. Most critically, it is undisputed that he has never consulted with Ms. Wood regarding any aspect of the case in forming his opinion, and has been privy to none of A.H.'s confidences.

In sum, Mr. Kehnemuyi was not, and is not, employed by the Defender General, and thus he is subject to no imputed conflict arising from such employment by the former attorney for the complaining witness. Moreover, even assuming Mr. Kehnemuyi's employment relationship could be described as one involving "temporary employment" in the Windham County Public Defender's Office, no automatic disqualification arises from Ms. Wood's employment in the Bennington County Public Defender's Office. Not only has the State failed to demonstrate any *actual* potential for the betrayal of confidences, but the relationships at issue in this matter are so palpably attenuated that they can not seriously stir concerns as to any appearance of impropriety.

To the contrary, the Court must note that post-conviction relief cases are typically characterized by severe challenges to an indigent prisoner's ability to obtain an experienced evaluation of the competence of trial counsel—opinions which are virtually indispensable to the viability of most petitions for post-judgment relief. Thus, the State's effort to disqualify Petitioner's expert in this matter affords a dramatic example of the adverse consequences likely to result if imputed conflicts must be automatically recognized in connection with Vermont's state-wide administration of its public defender system. Finding an expert with Mr. Kehnemuyi's experience would surely not be a matter of simple substitution. The State's zeal in this matter presumably is explained by

16

its desire to avoid any possibility of a retrial, and the negative impact that might have on A.H.  Yet, if Petitioner's conviction was tainted by ineffective assistance of counsel, the State no less than the Court is diminished by a process that fails to allow for a fair examination of that claim.  To grant the State's motion as a matter of automatic disqualification would jeopardize the integrity of these proceedings, and enshrine a formalism likely to be broadly antithetical to the rights of indigent criminal defendants to the services of competent legal counsel.

In light of the foregoing, the State's Motion to Preclude Petitioner's Expert is **DENIED.**

Dated this _____ day of May, 2010 at Bennington, Vermont.

_____
John P. Wesley, Presiding Judge