Donnie Ray McCALL, Petitioner,

v.

The DISTRICT COURT FOR the TWENTY–FIRST JUDICIAL DISTRICT, State of Colorado, and the Honorable Charles A. Buss, one of the Judges thereof, Respondents.

No. 89SA76.

Supreme Court of Colorado, En Banc.

Dec. 4, 1989.

David F. Vela, Colo. State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for petitioner.

Stephen K. ErkenBrack, Dist. Atty., Janis E. Chapman, Deputy Dist. Atty., Grand Junction, for respondents.

Justice LOHR delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we issued a rule directing the respondent, Mesa County District Court,[1] to show cause why the Colorado State Public Defender should not be permitted to withdraw from representing defendant Donnie Ray McCall on appeal from the denial of his

motion for post-conviction review of a judgment and sentence for second-degree murder. The public defender had moved to withdraw based upon a conflict of interest. The asserted conflict arose because McCall's pro se motion for post-conviction review alleged ineffective assistance of counsel in the district court by a deputy public defender based in the public defender's regional office in Grand Junction. The district court denied the motion to withdraw, ruling that appellate counsel, who was a deputy public defender in the appellate division of the public defender's office located in Denver, and the deputy public defender in Grand Junction who had represented the defendant in the district court were not related to each other in such a way as to require that appellate counsel be disqualified. We disagree with the trial court's decision and make the rule absolute.

I.

The defendant, Donnie Ray McCall, was originally charged in Mesa County District Court with first-degree murder. As a result of plea negotiations, he entered a plea of guilty to second-degree murder, an offense defined by section 18-3-103, 8B C.R.S. (1986). The court accepted the plea and on October 8, 1982, sentenced the defendant to the custody of the department of corrections for a twenty-four year term. Throughout the plea negotiations and during the entry of his plea, the defendant was represented by a deputy public defender on the staff of the Grand Junction regional office of the Colorado State Public Defender.

In May of 1984, the defendant filed a pro se motion for post-conviction review in the district court, alleging that he was a first-time felony offender and had received a sentence twice as long as the average sentence for second-degree murder "because of an erroneous plea-bargain arrangement." The defendant further alleged that

---

**1.** The respondents are formally designated as "The District Court For the Twenty–First Judicial District, State of Colorado, and the Honorable Charles A. Buss, one of the Judges thereof." For brevity, we refer to the respondents collectively as "Mesa County District Court" or "district court."

he had been ineffectively represented by counsel in that the deputy public defender had failed to disclose favorable information to the district court and had coerced him into pleading guilty to a reduced charge. The court appointed the deputy public defender who had represented the defendant throughout the earlier proceedings to represent him on his motion for post-conviction review.

Soon afterward, the deputy public defender requested the district court's permission to withdraw from representation of the defendant on the motion for post-conviction review. In his motion to withdraw, the attorney pointed out that the defendant's allegation that he had received ineffective representation during plea negotiations and entry of his plea created a conflict of interest because it challenged the adequacy of the attorney's own professional conduct. The trial court agreed and appointed substitute private counsel on June 18, 1984.

Three years later the trial court denied the defendant's motion for post-conviction review. By order dated August 2, 1987, the court then appointed the Colorado State Public Defender to represent the defendant in his appeal from the denial of the motion.

The appellate division of the state public defender's office ("appellate division") filed a motion in the Colorado Court of Appeals shortly thereafter, requesting leave to withdraw from representation of the defendant because of a conflict of interest. The court of appeals remanded the matter to the district court to consider the appellate division's request.

Without holding an evidentiary hearing, the district court denied the request to withdraw, citing *People v. Botham*, 629 P.2d 589 (Colo.1981), in support of the proposition that as a matter of law, the local deputy public defender who had represented the defendant in the district court and the deputy public defender in the appellate

division who was representing the defendant on appeal were "not related" and therefore no conflict of interest existed.

After recertification of the case to the court of appeals, that court denied a second request by the appellate division to withdraw as counsel for the defendant.[2] The appellate division then filed this original proceeding, and we issued a rule to show cause why the Colorado State Public Defender should not be permitted to withdraw from representation of the defendant. We now make the rule absolute.

## II.

■■■ Relief under C.A.R. 21 is an extraordinary remedy limited in purpose and in availability. *White v. District Court*, 695 P.2d 1133, 1135 (Colo.1984). A rule to show cause under C.A.R. 21 is authorized to test whether the trial court is proceeding without or in excess of its jurisdiction or to review a serious abuse of discretion when an appellate remedy would not be adequate. *People in Interest of Clinton*, 762 P.2d 1381, 1385 (Colo.1988); *Coquina Oil v. District Court*, 623 P.2d 40, 41 (Colo. 1981). Although the remedy permits early correction of a trial court's rulings for these purposes, it is not to be used as a substitute for an appeal. *White*, 695 P.2d at 1135. The granting of relief under C.A.R. 21 is within the discretion of this court. *Id.*

In the present case, the appellate division contends that the district court seriously abused its discretion by denying the appellate division's motion to withdraw as counsel for the defendant on appeal. Denial of relief, the appellate division asserts, would place appellate counsel in the untenable position of attempting to represent a defendant on appeal from a conviction for second degree murder in circumstances requiring the deputy public defender in the appellate division to argue that another deputy public defender provided ineffective assistance

---

**2.** The public defender did not seek a rule to show cause to challenge the court of appeals' action in denying the second request to withdraw. From this, we infer that the court of appeals did nothing more than recognize the

district court's denial of the public defender's request to withdraw and that it is the propriety of the district court's action that is at issue in this proceeding.

to the defendant during district court proceedings. We conclude that we should exercise our discretion to determine whether the district court correctly denied the appellate division's motion to withdraw.

### III.

■ A motion by an attorney for leave to withdraw from representation based on a conflict of interest is addressed to the sound discretion of the court, and will not be reversed unless clear error or abuse of discretion is shown. *Riley v. District Court,* 181 Colo. 90, 93, 507 P.2d 464, 465 (1973). Recognizing that "genuine conflicts of interest must be scrupulously avoided," *Allen v. District Court,* 184 Colo. 202, 206, 519 P.2d 351, 353 (1974), this court has ruled that "[w]henever a motion to withdraw is filed on the grounds that a conflict of interest may exist or may arise in the future, the trial judge must conduct a hearing to determine if a conflict of interest, or a potential conflict of interest, requires that counsel withdraw." *Id.* The district court in the present case considered the issue posed by the appellate division's motion for withdrawal to present a question of law only and denied the motion without conducting an evidentiary hearing.[3]

The district court based its denial of the appellate division's request to withdraw upon *People v. Botham,* 629 P.2d 589 (Colo.1981). *Botham* concerned the disqualification of a trial judge on grounds of bias or prejudice against the defendant. The trial judge in that case denied a defense *motion for substitution of judge* as untimely filed because Rollie Rogers, then the Colorado State Public Defender, knew of the alleged grounds for disqualification within the period for timely filing the motion.[4] The trial court reasoned that the local public defender, although not himself aware of this information before the expiration of the time prescribed for filing a motion to disqualify the judge, was "bound

by the knowledge of Rollie Rogers, Esq., who is a member and director of their office." *Id.* at 594. We reversed the ruling that the motion was not timely. *Id.* at 595.

According to the district court in the present case, *Botham*

held by implication that Rollie Rogers, the Colorado State Public Defender, was not the same as the defendant's counsel where the defendant was represented by a locally based attorney of the Colorado State Public Defender's Office when that court determined that knowledge held by Rollie Rogers, the Colorado State Public Defender, about reasons that would require a judge to disqualify himself was not knowledge of his agents, the locally based public defenders who were representing the defendant.

Applying its interpretation of *Botham* to the facts before it, the district court then ruled that appellate and local public defenders are "not related ... and therefore no conflict of interest exists." We believe this extends *Botham* beyond its natural and appropriate limits.

In reversing the trial court in *Botham* and holding that the motion for substitution of judge had been timely filed, this court did not directly address the trial judge's reasoning that knowledge held by the Colorado State Public Defender is imputed to local public defenders. We merely stated that because local defense counsel informed the trial court as soon as possible after learning of the disqualifying facts forming the basis of the motion for substitution, the motion was timely. *Id.* at 595.

Although in *Botham* we reversed the trial judge's ruling dismissing the motion for substitution of judge as untimely filed, we did not hold that for all purposes the Colorado State Public Defender and local public defenders are separate and unrelated. *Botham* did not address conflicts

---

**3.** The limited record available to us does not suggest that either party requested an evidentiary hearing. We conclude that the issue presented is a question of law and that an evidentiary hearing was not required.

**4.** The trial court also denied the motion on the basis that the affidavits submitted in support of the motion did not state sufficient grounds for disqualification. *Botham,* 629 P.2d at 594. We reversed that ruling. *Id.* at 595–96.

of interest issues. Consequently, the trial court's reliance on *Botham* was misplaced.

### IV.

■ "The need for defense counsel to be completely free from a conflict of interest is of great importance and has a direct bearing on the quality of our criminal justice system." *Allen*, 184 Colo. at 205, 519 P.2d at 352–53. Recognizing the importance of avoiding conflicts of interest, DR 5–101(A) of the Code of Professional Responsibility provides:

> Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

A deputy public defender who represented the defendant in the district court could not also represent the defendant in an appeal alleging ineffective assistance of counsel, because the deputy's own personal and professional interests would be at stake. The appellate division asserts that the necessity of arguing that a colleague within the public defender system provided ineffective assistance of counsel to the defendant also creates a situation that may affect the exercise of professional judgment of appellate counsel to the detriment of the defendant, in violation of DR 5–101(A).

The Code of Professional Responsibility includes a rule of imputed disqualification, which extends an individual attorney's disqualification to the other members of his or her law firm. DR 5–105(D) of the Code of Professional Responsibility provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate or any other lawyer affiliated with him or his firm may accept or continue such employment.

■ The rule of imputed disqualification applies to both private law firms and public law firms, such as a district attorney's office. In *People v. Garcia*, 698 P.2d 801 (Colo.1985), we affirmed the disqualification of an entire district attorney's office because one member of the office was an essential witness at a defendant's trial, stating:

> The Code of Professional Responsibility would require a private law firm to withdraw if an attorney associated with the firm was required to withdraw because of an ethical rule. The same rule of imputed disqualification may be considered in determining the ethical standards for disqualification of a public law firm, such as a district attorney.

*Id.* at 806 (citations omitted); *see also De-Luzio v. People*, 177 Colo. 389, 395, 494 P.2d 589, 592 (1972) ("knowledge of the chief deputy and of the chief investigator for the district attorney is knowledge to [sic] the entire office").

We have also applied the rule of imputed disqualification to public defenders. In *Allen*, 184 Colo. at 205–06, 519 P.2d at 353, we ruled that a public defender's motion to withdraw from representing a defendant endorsed as a witness against another defendant represented by the same regional public defender's office should have been granted, although the defendants faced unrelated charges and were represented by different members of the public defender staff. Applying DR 5–105(D) to the public defender's office, we concluded that "even though different members of the public defender's staff were representing [the two defendants], the knowledge, or position gained by any member of the staff would be attributed to the other." *Id.* at 205–06, 519 P.2d at 353. Similarly, in *Rodriguez v. District Court*, 719 P.2d 699 (Colo.1986), we held that knowledge must be imputed among members of a local public defender's office,[5] holding that "any confidential

---

5. *See also Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1374 n. 4 (1981) (citing *Vt. Bar Ass'n Professional Responsibility Comm. Opinions* No. 76–18 (1977), holding that public defender system of entire state of Vermont should be treated as single law firm for purposes of conflicts of interest analysis); Webster, *The Public Defender, the Sixth Amendment, and the Code of Professional Responsibility: the Resolution of a Conflict of Interest,* 12 Amer.Crim.L.Rev. 739, 742–

information obtained by [a public defender from a client] must be imputed to the other members of the public defender's staff." *Id.* at 704.

■ A local public defender faced with the prospect of arguing his or her own incompetence to protect a client's interests on appeal clearly has a conflict of interest requiring disqualification. Under the rule of imputed disqualification and our prior cases, the local public defender's conflict would be imputed to the remaining staff within the attorney's own local public defender office, requiring that other members of that office also be disqualified from representing the defendant on appeal. It remains to be considered whether the disqualification extends to deputy public defenders in the appellate division as well.

### V.

■ We recognized the purpose behind DR 5–105(D) in *Wright v. District Court,* 731 P.2d 661 (Colo.1987):

> The rule of imputed disqualification recognizes the close personal and financial relationship that exists between an attorney and other members of the law firm. That relationship not only prevents members of the firm from representing conflicting interests, but also constitutes grounds for disqualifying another member of the law firm.

*Id.* at 663. The record before us contains no evidence concerning the functional relationship between the appellate division and the regional offices of the Colorado State Public Defender's office. Nor is the state public defender act, §§ 21–1–101 to 21–1–

106, 8B C.R.S. (1986 & 1989 Supp.), enlightening. We are persuaded, however, that for the purpose of the type of conflict asserted here, the absence of that information is not critical.[6]

We believe that requiring a member of the appellate division to argue that a local deputy public defender rendered ineffective assistance of counsel would have an inherently deleterious effect on relationships within the public defender system and would be destructive of an office upon which the criminal justice system relies to provide competent legal services to indigent defendants. Moreover, notwithstanding the vigor and skill with which the appellate division attorney might present the ineffective assistance of counsel argument, the conflict of loyalties inherent in the attorney's role would make the quality of his or her representation, and thus the fairness and impartiality of the appellate process, necessarily suspect in the public eye. This would derogate from the prescription of Canon 9 of the Code of Professional Responsibility that "[a] lawyer should avoid even the appearance of professional impropriety." For these reasons, we conclude that the rule of imputed disqualification must be applied in this case, with the result that the appellate division must be permitted to withdraw from representing the defendant. *See Hill v. State,* 263 Ark. 478, 566 S.W.2d 127 (1978) (appointing one public defender to represent on appeal a convicted person who is asserting that another public defender provided ineffective assistance of counsel at trial involves inevitable conflict of interest); *Adams v. State,* 380 So.2d 421 (Fla.1980) (same); *State v. Bell,*

43 and 743 n. 10 (1975); *Osborn v. District Court,* 619 P.2d 41, 46 n. 7 (Colo.1980).

**6.** It may be possible for the state public defender to minimize disqualification for conflicts of interest involving attorneys in separate regional offices by adopting internal procedures to prevent access to information. *See generally Weglarz v. Bruck,* 128 Ill.App.3d 1, 83 Ill.Dec. 266, 269–70, 470 N.E.2d 21, 24–25 (1984) (general discussion of "Chinese Wall" as a screening device); Note, *The Chinese Wall Defense to Law-Firm Disqualification,* 128 U.Pa.L.Rev. 677 (1980); *cf. Osborn v. District Court,* 619 P.2d at 46 and n. 6 (recognizing possibility of "Chinese

Wall" as protection against disqualification, but concluding that facts did not show attempt to create such protection); *Ranum v. Colorado Real Estate Comm'n,* 713 P.2d 418, 420 (Colo. App.1985) ("Chinese Wall" successfully erected within Colorado Attorney General's office). The conflict in the present case, however, does not present an issue of whether knowledge possessed by one part of the public defender's office can be effectively screened or walled off from another part of the office, so our analysis would not be aided by further information about the internal organization and procedures of the public defender's office.

90 N.J. 163, 447 A.2d 525, 528 n. 2 (1982) (adopting per se disqualification rule in cases where a public defender is required to attack the trial competence of another public defender; case-by-case rule for other types of conflict of interest); *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199, 200 (1978) (disqualifying public defender's office in all cases requiring that public defender representing criminal defendant on appeal argue that ineffective assistance of counsel was provided by another public defender at trial); *cf. Angarano v. United States*, 329 A.2d 453, 457 (D.C.App.1974) (rejecting suggestion that an appellate public defender could argue constitutional ineffectiveness of counsel provided by public defender who represented defendant at trial).[7]

## VI.

We wish to stress the limitation of our holding. The case before us involves only one type of conflict of interest—the representation by the appellate division of a person who in seeking appellate relief from a judgment of conviction asserts that a deputy public defender provided ineffective assistance of counsel in the trial court. The types of possible conflicts of interest that the public defender may encounter in representing persons accused of crimes are myriad. The standards for evaluating conflicts other than the type at issue in the present case, and the remedies to be adopted should conflicts be found to exist, must be considered as the occasions arise and should be tailored to fit the particular circumstances. *See, e.g., Rodriguez*, 719 P.2d at 703–09.

## VII.

We conclude that the district court abused its discretion in denying the Colorado State Public Defender's *motion to withdraw* from representation of the defendant on appeal. Accordingly, the rule is made absolute and the cause remanded to the court of appeals for return to the district court for the limited purpose of permitting the public defender to withdraw and appointing substitute counsel to represent the defendant on appeal from denial of his motion for post-conviction review.

---

**7.** The Mesa County District Court urges us to adopt the approach favored by the Illinois courts, applying a case-by-case rule for all types of conflicts of interest faced by public defenders, *see People v. Banks*, 121 Ill.2d 36, 117 Ill. Dec. 266, 269, 520 N.E.2d 617, 620 (1987) (prescribing "a case-by-case inquiry designed to determine whether the facts of a particular case indicate an actual conflict and therefore preclude representation"); *see also Richards v. Clow*, 103 N.M. 14, 16, 702 P.2d 4, 6 (1985) (same); *cf. Thompson v. State*, 254 Ga. 393, 330 S.E.2d 348 (1985) (adopting case-by-case rule for conflicts of interest involving part-time state court solicitors). We conclude instead, for the reasons articulated in this opinion, that a per se rule is appropriate for the particular type of conflict of interest involved in the present case.