Hillsborough-northern judicial district
No. 2006-043

THE STATE OF NEW HAMPSHIRE

v.

SCOTT W. VEALE

Argued: November 14, 2006
Opinion Issued: January 19, 2007

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The appellate defender has moved to withdraw from representing the defendant, Scott W. Veale, in this matter due to an alleged conflict of interest. For the reasons that follow, we deny the motion without prejudice, and remand in part.

The following facts are not disputed. In June 2003, the defendant was indicted for one count of timber trespass contrary to RSA chapter 227-J (2000 & Supp. 2003) and one count of theft by unauthorized taking

contrary to RSA 637:3 (1996). Prior to his trial on those charges, the defendant's court-appointed public defender moved for, and was granted, a competency evaluation. As a result of the evaluation and after a hearing, the Trial Court (*Barry*, J.) found the defendant incompetent to stand trial and not restorable to competence. In response to the defendant's motion, the trial court dismissed the charges. *See* RSA 135:17-a (2005).

The defendant filed a *pro se* notice of appeal in this court, claiming, among other things, that his trial counsel had provided ineffective assistance. The appellate defender was appointed to represent the defendant on appeal. The appellate defender subsequently moved to withdraw, contending that because the defendant had raised a claim of ineffective assistance against a public defender, it could not represent the defendant due to a conflict of interest. The State and the appellate defender submitted memoranda and presented oral argument on the issue of whether the appellate defender may represent a client who has raised a claim of ineffective assistance against a public defender, an issue of first impression in this state.

The appellate defender argues, and the State agrees, that it may not represent clients who have challenged the effectiveness of a public defender's assistance. According to the appellate defender, its office and that of the public defender are, in essence, a single office or "firm," and the rules of professional conduct relating to conflicts of interest apply to its "firm" in the same way that they apply to private firms. Therefore, because the conflict rules would require the disqualification of the attorneys in a private firm in similar circumstances, the appellate defender is disqualified in this case.

As to whether the appellate defender and the public defender constitute a single firm, we note that we have never precisely defined the term "firm" for the purpose of applying the rules of professional conduct. While we have not defined the term, the ABA Model Code Comments to New Hampshire Rule of Professional Conduct 1.10 do. We have not formally adopted the ABA Model Code Comments, but we have previously looked to them for guidance, *see, e.g., Franklin v. Callum*, 146 N.H. 779, 783 (2001), and we do so here.

The definition in the comments to Rule 1.10 does not give a concise, bright-line rule for determining what constitutes a firm. The comments note that the term includes lawyers working in a legal services organization, but that the actual existence of a firm depends upon the specific facts. Therefore, it sets forth various characteristics to consider when determining whether a firm exists. For instance, if a group of lawyers conducts itself in a manner suggesting that it is a firm, or presents itself to the public in such a manner, it ought to be considered a firm. Also

relevant is whether the lawyers in the group have mutual access to confidential information concerning the clients they serve, because such access indicates that the group functions as a firm.

We think it obvious that the appellate defender and the public defender are, individually, legal services organizations that qualify as firms. The question, therefore, is whether the two offices are sufficiently intertwined that they function as one firm. According to the appellate defender, the deputy appellate defender and assistant appellate defenders are employees of the public defender, and receive their salaries and benefits from the public defender. Also, the offices of the public defender and appellate defender regularly share personnel, with public defenders serving as appellate defenders on rotations lasting not more than two years. Even when a public defender is serving as an appellate defender, he or she might still be actively representing clients at the trial level, and might retain administrative duties within the public defender's office. Additionally, public defenders and appellate defenders work closely together and share confidential information. Attorneys in the two offices are often trained and educated together using materials and services available only to employees of the public defender. Accordingly, the appellate defender contends, its office and the public defender's office should be viewed as a single firm.

■ Given the current structure of the offices of the public defender and appellate defender, with their close, and often overlapping, personnel and functions, we conclude that they qualify as a single firm for the application of the rules of professional conduct. The attorneys of the offices regularly interact with each other and share confidential information and resources. Also, the attorneys of both offices are employed and paid by a common employer, the public defender. Therefore, they conduct themselves as a single firm. Finally, the public defender's website states that it operates the appellate defender program. *See* http://www.nhpd.org/aboutnhpd.htm (last visited Dec. 14, 2006). Thus, the offices hold themselves out to the public as a single firm.

The appellate defender next contends that the rules of professional conduct regarding conflicts of interest ought to apply to it in the same manner as they apply to private firms. As noted, this is an issue of first impression in New Hampshire and therefore we look to other jurisdictions that have addressed the issue for guidance. Some jurisdictions have concluded that the conflict of interest rules do not apply to public defender organizations in the same way, or to the same degree, as they do to private firms. *See, e.g., People v. Banks*, 520 N.E.2d 617, 619 (Ill. 1987); *Asch v. State*, 62 P.3d 945, 953 (Wyo. 2003). Other courts have reached the

opposite conclusion. *See, e.g., Borden v. Borden,* 277 A.2d 89, 92 (D.C. 1971); *McCall v. District Court,* 783 P.2d 1223, 1227 (Colo. 1989). Having reviewed these decisions, we believe the better rule is not to exempt the public defender and appellate defender from the operation of the conflict of interest rules for claims of ineffective assistance of counsel.

Courts that do not apply the rules to public defender organizations in the same way as to private firms often conclude that because there is no financial interest at stake, a public defender or appellate defender will not be influenced in the same way as a private attorney, and thus the conflict rules need not be applied equally. *See Banks,* 520 N.E.2d at 620. Alternatively, those courts find that disqualifying a public defender or appellate defender under the same rules as private attorneys could deprive litigants of access to the most competent counsel. *See Asch,* 62 P.3d at 953. We do not find either rationale persuasive.

As to the first concern, financial interests are not the only interests that could influence an attorney, and, arguably, are not the most powerful influences.

> It might be argued that there are no conflict of interest questions in the public defender context because of the absence of economic interest in challenging or refraining from challenging the conduct of trial counsel. However, this view completely ignores the fact that the same subtle but real non-economic pressures present in private practice are equally operative in a public defender service. After all, the rules concerning conflict of interest operate on and are enforced against lawyers and not against public or private law firms. By their nature, the non-economic conflicts— friendship, loyalty, pride, fear of ostracism or retaliation— operate with equal vigor on the individual lawyer in the public firm. It is he who feels the conflict, not the form of his law association, upon whom the ethical considerations must prevail.

*State v. Lentz,* 639 N.E.2d 784, 788 (Ohio 1994) (Wright, J., dissenting) (quotation and emphasis omitted); *see also Cannon v. Mullin,* 383 F.3d 1152, 1173 (10th Cir. 2004) ("An understandable, although inappropriate, regard for collegiality may restrain appellate counsel from identifying and arguing trial-attorney error."). Thus, although financial benefits might not be at stake, the relations between the offices and the individual attorneys would be strained and public confidence in the lawyers of the public defender and the appellate defender would be undermined. Moreover, as noted by the Colorado Supreme Court, "notwithstanding the vigor and skill with which the appellate division attorney might present the ineffective assistance of counsel argument, the conflict of loyalties inherent

in the attorney's role would make the quality of his or her representation, and thus the fairness and impartiality of the appellate process, necessarily suspect in the public eye." *McCall*, 783 P.2d at 1228. Therefore, we find unpersuasive the argument that a lack of economic interest should exempt the public defender and appellate defender from the operation of the conflict of interest rules when ineffective assistance of a public defender is raised. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 123 cmt. d(iv) (1998).

■ Regarding the second concern, we do not agree that applying the conflict rules to the appellate defender in situations such as this will deprive indigent defendants of competent counsel. First, we note that our decision is limited only to those instances where a defendant has raised an ineffective assistance of counsel claim against a public defender. Also, although the specialized training and experience of the appellate defender's attorneys make them desirable counsel, they are not the only attorneys capable of providing adequate counsel on appeal. Therefore, we do not see the potential deprivation of an appellate defender's service in these limited circumstances as adequate justification for applying a different set of conflict rules to that office. Accordingly, we hold that when an ineffective assistance of counsel claim is filed against a public defender, the offices of the public defender and the appellate defender are subject to the same conflict rules as are attorneys in private practice.

Having reached the above conclusion, we also conclude that a straightforward application of the rules requires the appellate defender to be disqualified from litigating claims of ineffective assistance against a public defender. Under Rule 1.7(b), a lawyer shall not represent a client if that representation would be adverse to, among other things, the lawyer's own interests. N.H. R. PROF. CONDUCT 1.7(b). This rule requires only the possibility that the client's interests may be materially limited by the lawyer's interests. *Otis' Case*, 135 N.H. 612, 617 (1992). A public defender attempting to represent a client who has charged that public defender with ineffective assistance could, quite obviously, be representing a person with interests adverse to his own. The public defender, instead of advocating fully for the client, might be interested in protecting and preserving his own professional reputation. Thus, he would "likely be hesitant to raise his own trial inadequacies on appeal, or even inform the client of any inadequacies." *Mullin*, 383 F.3d at 1173. Therefore, that public defender would be forced to withdraw from any case alleging his ineffectiveness.

■ Rule 1.10 prevents any member of a firm from representing a client when any one member of that firm is prohibited from doing so by Rule 1.7. *See* N.H. R. PROF. CONDUCT 1.10(a). Thus, because Rule 1.7 would require

the withdrawal of a public defender who has allegedly provided ineffective assistance, that prohibition would be, by operation of Rule 1.10, imputed to the remaining members of the firm—in this case, the remaining attorneys of the offices of the public defender and the appellate defender. Thus, the appellate defender's attorneys would be disqualified by Rules 1.7 and 1.10 from representing a client who has claimed that a public defender rendered ineffective assistance.

While the rules appear to require the disqualification of the appellate defender when a public defender is alleged to have provided ineffective assistance, we must determine whether a claim of ineffective assistance, standing alone, is sufficient to create a conflict requiring disqualification. There is a split of authority as to whether the proper rule, when a claim of ineffective assistance is raised, is *per se* disqualification, or a case-by-case analysis of the nature of the conflict. *Compare Asch*, 62 P.3d at 953, *with McCall*, 783 P.2d at 1228. Under the *per se* rule, the mere allegation of ineffective assistance is sufficient to create a conflict of interest disqualifying the public defender and the appellate defender. *See McCall*, 783 P.2d at 1228. This is true even when the claim of ineffective assistance is without merit, or is raised only for some illegitimate purpose. Thus, while such a rule is easy to administer, it requires the appointment of independent counsel in cases where there was, in fact, no ineffective assistance, and thus no conflict.

Alternatively, a case-by-case analysis could be employed to assess the merits of the claim that the public defender provided ineffective assistance. *See Morales v. Bridgforth*, 100 P.3d 668, 669-70 (N.M. 2004). Under this approach, a preliminary determination of ineffectiveness is required. If it is preliminarily valid, a conflict would exist. If it is not valid, the appellate defender would not be disqualified. Such an approach would eliminate the problem of disqualifying the appellate defender in cases involving frivolous or meritless claims. However, this approach too is imperfect.

In those jurisdictions that apply the case-by-case approach, in order for appellate counsel to be disqualified, an "actual conflict" must be shown. *See, e.g., Banks*, 520 N.E.2d at 621. These jurisdictions do not, so far as we can discern, define the term "actual conflict." *See id.* More importantly, they do not provide any guidance for determining whether there is a conflict and how the conflict is to be measured. While either the public defender or the appellate defender could identify potential conflicts, neither could determine whether a potential conflict is an "actual conflict," because permitting such decisions would do nothing to counteract the appearance of impropriety created by the collegiality of the offices. Therefore, the final determination ought to be left to a disinterested party,

most probably the courts. *See, e.g., Lentz*, 639 N.E.2d at 786 (requiring trial court to determine existence of an actual conflict). Independent counsel would be necessary to represent the defendant when determining the viability of the ineffective assistance claims. Should the claims be preliminarily valid, that attorney, or new independent counsel, would be retained to pursue the defendant's claims on appeal. If the claims are not valid, then the appellate defender could be reappointed. While frivolous claims would be ferreted out, there would be increased costs to the State and the judiciary for retaining independent counsel to determine the preliminary validity of the claim. Additionally, such a process would result in substantial delays in the disposition of defendants' appeals.

■ Having reviewed the relevant authorities, we are not persuaded that either a strictly *per se*, or a case-by-case rule ought to be adopted. Instead, we believe the better rule to be a hybrid of the two approaches. Under this "hybrid" approach, if, on appeal, a defendant has raised a claim of ineffective assistance against a public defender and the appellate defender has been appointed as appellate counsel, the appeal will, absent special conditions, be stayed. This stay shall be automatic and shall take effect without regard to the merits of the ineffective assistance claim. In this way, raising a claim of ineffective assistance will act as a *per se* bar, at least temporarily, to continuing representation by the appellate defender.

■ Following the imposition of the stay, a defendant's ineffective assistance claim will be adjudicated on its merits in the superior court. Thus, a claim of ineffective assistance of counsel will maintain its proper place as a method of collateral review, and will not prematurely be merged with a defendant's claims on direct appeal. *See State v. McAdams*, 134 N.H. 445, 448 (1991)(declining to merge direct and collateral avenues of review). Once the trial court has rendered a decision, the defendant may, if necessary, resume the litigation of his original appeal with the aid of the appellate defender or with independent counsel, whichever is required under the circumstances of the case.

This "hybrid" approach, therefore, requires a defendant to weigh the consequences of raising a claim of ineffective assistance against a public defender, *e.g.*, possible delays in the disposition of his direct appeal, against his desire for a prompt resolution obtained with the aid of the specially trained attorneys of the appellate defender's office. Thus, it is the defendant, and not the public defender or the appellate defender who must, in the first instance, consider whether a claim of ineffective assistance is sufficiently worthwhile to pursue while a direct appeal is pending, and it is the defendant who will bear the burden of that choice.

Turning to the case at hand, the defendant's appeal includes claims that the public defender who represented him in the trial court provided ineffective assistance. Therefore, the defendant's appeal is hereby stayed, but the appellate defender shall remain counsel of record in this appeal. The defendant's claims of ineffective assistance are remanded to the superior court for resolution. Following resolution in the superior court, the defendant may resume the litigation of his appeal with proper counsel.

We also note that this case involves but one type of conflict of interest. The standards for evaluating conflicts other than the type discussed, and the remedies for such conflicts will be considered when such conflicts arise and should be designed to meet the particular circumstances. *McCall*, 783 P.2d at 1229. We finally note that although Rule 1.7(b) provides that a conflict may be waived in certain circumstances, we need not address whether the appellate defender could obtain a waiver in this case because there is no indication that the appellate defender has sought such a waiver or believes that seeking such a waiver would be appropriate. Accordingly, for the reasons stated, we deny the appellate defender's motion to withdraw without prejudice, and remand the defendant's claims of ineffective assistance to the superior court for resolution.

*Motion denied without prejudice; appeal remanded in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.