MAASSEN, Justice.
I. INTRODUCTION
A defendant pleaded guilty to attempted first-degree sexual abuse of a minor. On the day of sentencing he moved to withdraw his plea, arguing that he had not understood the terms of the agreement and had received ineffective assistance of counsel. The superior court declined to appoint a different lawyer to represent him on the motion to withdraw his plea and denied the motion. The court of appeals affirmed these decisions.[1]
We accepted Nelson's petition for review on the question whether he was entitled to conflict-free counsel on the motion to withdraw his plea. We adopt a per se rule requiring conflict-free counsel in the context of plea withdrawals and therefore reverse the decision of the court of appeals. We remand to the superior court to decide Nelson's plea-withdrawal motion while he is represented by conflict-free counsel.
II. FACTS AND PROCEEDINGS
In 2011 Justin A. D. Nelson was indicted on three felony counts of sexual abuse of a minor. He was initially represented by attorneys Patricia Douglass and Alexander Foote, both of the Dillingham office of the Alaska Public Defender Agency.
At the start of the first day of trial, Douglass informed the court that Nelson "want[ed] to take the deal" that the State had offered him.[2] The court took a brief *242 recess so Nelson could confer with his attorneys. After the break the court talked about the details of the plea agreement and the applicable sentencing ranges. Douglass confirmed that she had gone over the plea agreement with Nelson; she believed he understood the situation and was competent to proceed. In a brief allocution, Nelson said he was accepting the Alaska Criminal Rule 11 offer because he was "trying to look for the minimum time possible ... and it just looks like this is it." The court accepted Nelson's plea.
On the day set for sentencing, Foote, on Nelson's behalf, filed a combined motion seeking to withdraw the plea and asking that the Public Defender Agency be allowed to withdraw from representing Nelson. According to the motion, Nelson believed that the Public Defender Agency had "been ineffective as counsel," that Douglass "was not supportive of his defense," and that Nelson had not understood "the full ramifications of the Rule 11 agreement" at the time he agreed to it. The motion also informed the court that Nelson "may have additional argument he wishes to make that counsel is unaware of, as our office was only recently informed of Mr. Nelson's objective, and communication has proven difficult due to Mr. Nelson's incarceration."
Nelson was not present at the sentencing hearing, apparently due to a transportation glitch. Before discussing rescheduling, the court asked about Nelson's motion, focusing first on the assertion that Nelson might have "additional argument" as to why he should be allowed to withdraw his plea. Foote explained the difficulty he and Douglass were having communicating with their client. The court observed that the defense motion seemed "insufficient at this point," asked that it be supplemented within two weeks (and "[i]f you need more time, ask for it"), and postponed the sentencing hearing until further notice. The motion was never supplemented. The court denied the request to withdraw the guilty plea on March 8 and the request that the Public Defender Agency be allowed to withdraw as counsel on March 13. The court set sentencing for March 16.
On March 14 the court received a handwritten letter from Nelson dated February 25. In the letter, Nelson told the court that he had no productive communication with his Public Defender Agency attorneys, that he did not "know what's going on," and that he was "confused about a lot of things in [his] case." He complained that Douglass often hung up on him "while [he] was trying to explain [his] case," that he did not know if any motions had been filed on his behalf, and that all he "wanted [was] a fair trial, a fair attorney that will listen to what [he had] to say."
In response, the court provided Nelson with "[c]opies of all 2012 pleadings and orders" and ordered defense counsel to meet with him within the next two days. On March 16, the day set for sentencing, a response to the court's order was filed by Robert Meachum, another attorney in the Dillingham Public Defender Agency office. Meachum reported that Nelson did "not want to proceed with sentencing as scheduled" and asked that the court consider his February 25 letter "as reasons why he should be allowed to withdraw his plea."
Nelson was present at the hearing that afternoon, represented by Meachum. The court explained that it had reviewed Nelson's February 25 letter but saw "nothing that justifies a change of plea or a withdrawal of the change of plea," though "[i]t may justify withdrawal of counsel." According to the court, the most the letter showed was "a change in [Nelson's] mind" about the plea agreement, which fell short of "a fair and just reason to withdraw his plea." The court reiterated its denial of Nelson's motion to withdraw his plea. The court was willing, however, to allow Nelson "to move for reconsideration, ... to delay sentencing, ... [or] to renew his motion for a different attorney." But Meachum suggested that the appropriate procedural route was for Nelson to wait *243 and allege ineffective assistance of counsel in a motion for post-conviction relief, and in the meantime "perhaps [they] ought to just go ahead with sentencing."
The court next heard a statement read by the victim's father. The court then reiterated its intent to deny Nelson's motion to withdraw his plea, finding that there was not "a fair reason, a just reason" for withdrawal, that it "would prejudice the State," and that "it would harm the victims." At Nelson's request, the court agreed to postpone sentencing another week to give him time to talk to his attorney, though Meachum told the court that he had already spoken with Nelson in February and "twice in the past week" and did not know what Nelson could tell him that he did not know already. The court again noted that "it may be that [Nelson] need[s] another attorney appointed sooner rather than later," but it did not again address the Agency attorneys' request to withdraw.
When the superior court held the sentencing hearing the following week, Meachum informed the court, "I was ready to go last week, I'm ready to go today," and said he had not spoken to Nelson since the last hearing because he thought they had nothing new to say to each other. Nelson told the court he had been expecting Meachum to visit him because he had "some things that [he] needed for [Meachum] to say"; he also complained that he had not seen any discovery, transcripts, or other documents related to his case. He said, "[T]he reason I took a deal is because of ineffective assistance, and the reason why I took it back is because of ineffective assistance." The court explained, however, that it had gone back over the record of the plea agreement and remained unconvinced that there was any reason to allow the plea's withdrawal. And Meachum reiterated his view that a claim of ineffective assistance of counsel should be "litigated in post-conviction relief."
The court proceeded with sentencing over Nelson's continued objections that he wanted a representation hearing instead. The court recognized the Public Defender Agency's conflict, however, and after sentencing it relieved the Agency of its duty to represent Nelson any further; the court said it was "appointing new counsel at this time, OPA or OPA contractor, for purposes of reviewing for appeal or post[-] conviction relief."
Represented by new counsel from the Office of Public Advocacy, Nelson appealed to the court of appeals.[3] The court held in an unpublished opinion that while Nelson should not have been required to wait until after sentencing to litigate his claim of ineffective assistance of counsel, the superior court did not err by denying his motion to withdraw his plea because he had not articulated a "colorable basis" for withdrawal.[4] Nelson petitioned for rehearing.[5] On rehearing the court of appeals held that, while "the appointment of conflict counsel will often be the appropriate action in these circumstances, particularly because a different standard applies to a presentencing motion to withdraw a plea as opposed to a post-sentencing motion to withdraw a plea," deference to the superior court's discretion was appropriate given Nelson's inability "to articulate or substantiate any specific assertions of how he had been incompetently represented" and the fact that sentencing "had already been delayed multiple times."[6]
Nelson filed a petition for hearing, which we granted.
III. STANDARD OF REVIEW
"We review constitutional questions using our independent judgment, ... adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[7] Whether a conflict of interest exists under the Alaska Rules of Professional Conduct is an issue of law also reviewed de novo under *244 the independent judgment standard.[8] Finally, whether to grant or deny a motion to withdraw a plea is within the trial court's discretion, and we review its decision for abuse of discretion.[9]
IV. DISCUSSION
In the discussion that follows, we first identify the conflict of interest shared by Nelson's three Public Defender Agency lawyers. We next conclude that Nelson was entitled to conflict counsel[10] immediately after the conflict of interest arose - that is, when Nelson first raised his claim, in the context of his plea-withdrawal motion, that his Agency lawyers provided ineffective assistance of counsel. Finally, we conclude that it was an abuse of discretion to deny the plea-withdrawal motion under these circumstances.
A. Nelson's Public Defender Agency Lawyers Had A Concurrent Conflict Of Interest Under Rule Of Professional Conduct 1.7.
At the sentencing hearing the superior court recognized that the Public Defender Agency had a conflict of interest which required the appointment of a lawyer without that conflict - though the superior court applied the new counsel remedy only to appellate and post-conviction proceedings. As the first step in our analysis of the issues raised in this petition, we agree there was a conflict of interest.
Alaska Rule of Professional Conduct 1.7 mandates that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict exists when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer ."[11] One such "personal interest" that may risk "materially limit[ing]" the lawyer's representation is the lawyer's interest in defending the professional competency of that representation. The District of Columbia Court of Appeals found a violation of Rule 1.7 under circumstances similar to those presented here: A lawyer continued representing a defendant on his motion to withdraw a guilty plea following allegations that the lawyer had coerced the defendant into pleading guilty.[12] The court agreed with the bar disciplinary body that the lawyer's representation of his client "was materially limited by his own interests."[13] The court explained: "Because [the defendant] alleged coercion and ineffective assistance of counsel as grounds for his motion to withdraw his guilty plea, [the lawyer] could not argue the motion to withdraw without possibly admitting serious ethical violations and subjecting himself to possible liability for malpractice."[14] This left the client "unrepresented by counsel on the issue relating to the request to withdraw the guilty plea."[15]
The same conflict existed in this case for Douglass and Foote, Nelson's original attorneys from the Dillingham office of the Public Defender Agency. Although Nelson's specific *245 complaints were directed primarily at Douglass, his more general complaints - confusion, poor communication, and lack of information - involved his representation as a whole, thus necessarily including Foote. Had Douglass and Foote represented Nelson on his motion to withdraw his plea, they would have been required to argue their own ineffectiveness and lapses of professional duty, against their own personal interest. We recognize a "significant risk" that this personal interest would "materially limit[ ]" their representation of Nelson in that context.[16]
As explained above, however, it was another attorney in the Dillingham office, Meachum, who took up Nelson's representation after Foote filed the motion to withdraw the guilty plea and to allow the Public Defender Agency's withdrawal from representation. But public defenders may be conflicted even when, like Meachum, they did not take part in the challenged proceedings and were not themselves alleged to be ineffective. Under Alaska Rule of Professional Conduct 1.10(a),[17] lawyers who "are associated in a firm" should not "knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] 1.7" except under the following condition: "the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." The next question to answer, therefore, is whether there was "a significant risk" that Meachum's representation of Nelson would be "materially limited" by the personal interest of his prohibited colleagues.
Courts have taken different approaches to this issue.[18] Some, including the United States Court of Appeals for the Tenth Circuit and state courts in Illinois, New Jersey, New Mexico, Ohio, and Rhode Island, follow a case-by-case rule: whether one public defender's conflict is imputed to others in the same office "will turn on the specific circumstances."[19] Relevant circumstances include such things as the physical proximity of the lawyers' offices, office culture, and the individual lawyer's history of raising ineffective assistance claims.[20] The State endorses this case-by-case rule. It argues that a presumption of conflict in the public defender context is unwarranted for several reasons: (1) public defenders have less financial incentive than private lawyers to avoid ineffective assistance claims because their pay is not dependent on the results of individual cases; (2) the agency's reputation is in fact bolstered when one employee pursues ineffective assistance allegations against another; and (3) loyalty to colleagues is unlikely to cloud public defenders' judgment, as they have a "unique duty of loyalty to their clients."
Other states follow a per se rule, under which a "mere allegation of ineffective assistance is sufficient to create a conflict of interest disqualifying the public defender."[21] It is *246 this rule that Nelson endorses, and it is the rule we prefer.
We recognize that public defenders, like any other lawyers, may feel strongly loyal to individual colleagues; public defenders, like any other lawyers, may fear social or bureaucratic consequences in the workplace from their pursuit of an argument that a coworker or supervisor acted incompetently. Individuals vary, of course, but none should be asked to face "the dilemma of [either] vigorously asserting the petitioner's claim or defending the professional reputation of [their] office."[22] And trial judges would be placed in a difficult position if they were required to decide on a case-by-case basis whether individual public defenders were detached enough from their colleagues to zealously pursue ineffective assistance claims without being "materially limited" under Rule 1.10(a).
We therefore hold that a public defender has a conflict of interest when the petitioner raises a claim of ineffective assistance of counsel against another public defender in the same office. Under this per se rule, Meachum had an imputed conflict of interest because he worked in the same office of the Public Defender Agency as Douglass and Foote.[23]
B. Nelson Should Have Been Appointed Conflict Counsel After He Filed A Motion Arguing Ineffective Assistance Of Counsel.
We now examine whether the superior court should have appointed conflict counsel immediately rather than first sentencing Nelson and appointing conflict counsel only for purposes of appellate or post-conviction review. The State concedes that conflict counsel will be necessary "[i]f a trial court opts to fully litigate a plea-withdrawal motion predicated on ineffective assistance of counsel," that is, if it decides that there are disputed issues of material fact that need to be aired in an evidentiary hearing. But the State contends that a plea-withdrawal motion will only reach that stage if the motion states a prima facie claim of ineffective assistance - raising "specific, non-conclusory allegations that if credited would permit the court to find facts by a preponderance of the evidence that support the conclusion that counsel was ineffective and that this was a significant factor in the defendant's decision to enter a plea." It is only if the motion survives this preliminary inquiry that original counsel is "suspended" and conflict counsel is appointed for purposes of the evidentiary hearing. The State suggests that original counsel must withdraw only if and when "the court finds ineffective assistance and grants plea withdrawal."
Nelson, in contrast, argues that the right to conflict counsel arises immediately when a motion based on ineffective assistance of counsel is filed "because the right to counsel is a fundamental right." He argues that whenever the appointment of conflict counsel "requires that a defendant meet a specific burden of proof, the defendant necessarily finds himself acting pro se and advocating against his own attorney" in contravention of the Sixth Amendment's right-to-counsel guarantee. Nelson argues that the State's proposed two-step process requires that a defendant proceed on a complex topic essentially without counsel, and that this will ensure *247 that "only the most articulate and eloquent of defendants will be able to assert their rights." Nelson minimizes the procedural downside of an immediate and automatic appointment of conflict counsel.
The Sixth Amendment guarantees the right to the assistance of counsel in a criminal case.[24] This guarantee applies to state proceedings by virtue of the Fourteenth Amendment.[25] "Once [the] right attaches, the defendant is entitled to the presence of counsel at 'any "critical stage" of postattachment proceedings.' "[26] A proceeding on a motion to withdraw a guilty plea is a "critical stage."[27] We must agree with those courts that have found a violation of a defendant's Sixth Amendment right to counsel when the defendant has had to pursue a plea withdrawal motion based on ineffective assistance of counsel without the help of conflict counsel.[28] And we reject the idea that the right to conflict counsel depends on the defendant's ability to first cross a "prima facie case" threshold while essentially unrepresented.
Finally, fairness favors a per se approach to the appointment of conflict counsel in this context because of the different standards of proof required before and after sentencing. Alaska Rule of Criminal Procedure 11(h) addresses motions to withdraw guilty pleas. Under Rule 11(h)(2), the court must grant a presentencing motion to withdraw a guilty plea if "withdrawal is necessary to correct manifest injustice," but the court may grant the motion for "any fair and just reason" provided that the prosecution has not been substantially prejudiced. Under Rule 11(h)(3), in contrast, a defendant may withdraw a guilty plea after sentencing only through an application for post-conviction relief, which may be granted only if the defendant proves that "withdrawal [of the plea] is necessary to correct a manifest injustice."[29] Given the significantly higher burden post-sentencing, the appointment of conflict counsel only for purposes of appeal and post-conviction relief cannot make up for a lack of conflict counsel before sentencing.
In its helpful amicus brief, the Public Defender Agency explains that the Agency and OPA "have a system in place for dealing with the imputation of conflicts [from one Agency attorney to others in the Agency] under Richard B.[30 ]" but that "the system broke *248 down in this case." According to the Agency, "[w]hen a client wants to withdraw his plea prior to sentencing, the Agency transfers the case to OPA for the limited purpose of representing the client on that issue." If the client abandons the motion or loses it, then "the Agency will take the case back from OPA and reassign it to the original trial attorney." But if "the client pursues his motion and wins," then "the Agency will take the case back and assign it to a new attorney." In any scenario, the client's expressed wish to withdraw the plea prompts a change in counsel for purposes of litigating at least that issue. As explained, the system appears to be consistent with the per se approach and demonstrates the approach's feasibility in practice.
We hold that a defendant is entitled to conflict counsel immediately after raising an ineffective assistance of counsel claim in the context of an attempt to withdraw a plea.
C. Reversal For Reconsideration Of The Plea-Withdrawal Motion Is Automatic Under These Circumstances.
Nelson argues that because his ineffective assistance claims were not investigated by a conflict-free attorney, we should presume prejudice - and that, because the superior court was aware of the conflict but failed to remedy the situation, reversal should be automatic. This is consistent with our case law. In Risher v. State we noted that "where there is ineffective assistance of counsel due to the deliberate conduct of the trial judge, as in the appointment of counsel where there is a known conflict of interest, the deterrence rationale remains applicable, and reversal will be automatic."[31] Here the superior court did not "appoint" counsel known to have a conflict of interest (as the conflict arose some time after the appointment), but the court accurately identified the conflict and yet failed to appoint conflict counsel except for purposes of post-conviction relief and appeal.
The United States Supreme Court has similarly held that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."[32] In the context of plea withdrawals specifically, "[t]he vast majority of courts that have addressed the denial of the right to counsel at this critical stage in a criminal proceeding have reversed and remanded to the trial court with instructions to appoint counsel and conduct a new hearing."[33] Consistent with Risher and the majority approach, we presume prejudice in this case and remand for reconsideration of Nelson's plea-withdrawal motion with the involvement of conflict counsel.
V. CONCLUSION
We REVERSE the decision of the court of appeals and REMAND to the superior court for the appointment of conflict counsel and reconsideration of Nelson's motion for withdrawal of his plea.

Nelson v. State , 397 P.3d 350 (Alaska App. 2017).

The agreement - made pursuant to Alaska Rule of Criminal Procedure 11 - required Nelson to plead guilty to one reduced count of attempted sexual abuse of a minor in the first degree, in exchange for which the State would dismiss the other two counts. The agreed sentence was 30 years imprisonment with ten suspended; the agreement also included terms of probation.

Nelson v. State , No. A-11259, 2016 WL 7422690 (Alaska App. Dec. 21, 2016).

Id. at *4.

See Nelson , 397 P.3d 350.

Id. at 351-52.

Treacy v. Municipality of Anchorage , 91 P.3d 252, 260 (Alaska 2004).

See Burrell v. Disciplinary Bd. of Alaska Bar Ass'n , 702 P.2d 240, 242-43 (Alaska 1985) (reviewing record in attorney disciplinary proceedings de novo and holding that attorney had a conflict of interest and violated applicable rules of professional conduct).

McClain v. State , 742 P.2d 269, 271 (Alaska App. 1987).

We follow the shorthand convention by which conflict-free counsel is referred to as "conflict counsel."

Alaska R. Prof. Conduct 1.7(a)(2) (emphasis added).

In re Ponds , 888 A.2d 234, 236, 239 (D.C. 2005).

Id. at 239.

Id.

Id. ; see also People v. Lepe , 164 Cal.App.3d 685, 211 Cal.Rptr. 432, 433 n.1, 434-35 (1985) (affirming order disqualifying entire county prosecutor's office from prosecuting defendant whom lead prosecutor had defended while in private practice, when issues included "constitutional infirmity" of earlier guilty plea "for lack of proper lawyering"); Carey v. State , 902 P.2d 1116, 1118 (Okla. Crim. App. 1995) (holding that requiring attorney to represent defendant in evidentiary hearing on motion to withdraw plea, in which petitioner testified that attorney "tried to coerce him into pleading guilty," unfairly forced attorney "to proceed in representing [defendant] against his own interests").

See Alaska R. Prof. Conduct 1.7(a)(2).

Public defenders' potential conflicts of interest are governed by Rule 1.10 rather than Alaska Rule of Professional Conduct 1.11 - relating to conflicts of interest of former and current government employees - because, although paid by the government, "public defenders do not represent the government or a public agency" but rather "work on behalf of private individuals." Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. , 71 P.3d 811, 822-23 (Alaska 2003).

See Christopher M. Johnson, Not for Love or Money: Appointing a Public Defender to Litigate a Claim of Ineffective Assistance Involving Another Public Defender , 78 Miss. L. J. 79, 80 (2008).

See Cannon v. Mullin , 383 F.3d 1152, 1173 (10th Cir. 2004), abrogated in part on other grounds , Simpson v. Carpenter , 912 F.3d 542 (10th Cir. 2018) ; see also People v. Banks , 121 Ill.2d 36, 117 Ill.Dec. 266, 520 N.E.2d 617, 621 (1987) ; State v. Bell , 90 N.J. 163, 447 A.2d 525, 528-29 (1982) ; Morales v. Bridgforth , 136 N.M. 511, 100 P.3d 668, 669 (2004) ; State v. Lentz , 70 Ohio St.3d 527, 639 N.E.2d 784, 786 (1994) ; Simpson v. State , 769 A.2d 1257, 1271 (R.I. 2001).

See Cannon, 383 F.3d at 1173-74.

State v. Veale , 154 N.H. 730, 919 A.2d 794, 799 (2007), abrogated in part on other grounds , State v. Thompson , 161 N.H. 507, 20 A.3d 242 (2011) ; see also Hill v. State , 263 Ark. 478, 566 S.W.2d 127, 127 (1978) (deciding that regardless of merit of post-conviction petition, when allegations of ineffective assistance of counsel are raised, the "better practice" is to appoint counsel "who does not practice law on a day to day basis with the lawyer against whom the allegations are made"); Angarano v. United States , 329 A.2d 453, 458 (D.C. 1974) (stating it is "obvious" that if there is a hearing on allegations of ineffectiveness, non-public defender service attorney "should be appointed if the original trial counsel was with that agency"); Adams v. State , 380 So.2d 421, 422 (Fla. 1980) (observing that attorney has "a hopeless conflict of interest" where appeal is predicated on ineffective assistance of another public defender in same office); Ryan v. Thomas , 261 Ga. 661, 409 S.E.2d 507, 509 (1991) (holding that different attorney in same public defender's office cannot reasonably be expected to properly assert ineffectiveness of another member; to hold otherwise would "permit one member of the firm to shield his fellow member against accusations of ineffectiveness at the expense of the rights of the defendant"); Commonwealth v. Moore , 569 Pa. 508, 805 A.2d 1212, 1215 (2002) (restating rule that, so as to ensure zealous advocacy on defendant's behalf, public defender may not assert ineffective assistance claim against another public defender in same office).

Adams, 380 So.2d at 422.

We do not preclude the possibility that a public defender may have a conflict of interest based on the representation by a public defender in a different geographic location. On the case before us, however, we are not prepared to apply the per se rule to the Public Defender Agency statewide.

U.S. Const. Amend. VI ; Risher v. State , 523 P.2d 421, 423 (Alaska 1974).

Risher, 523 P.2d at 423 (citing Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ).

Forster v. State , 236 P.3d 1157, 1168 (Alaska App. 2010) (quoting Rothgery v. Gillespie Cty., Texas , 554 U.S. 191, 212, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) ).

E.g. , Fortson v. State , 272 Ga. 457, 532 S.E.2d 102, 104 (2000).

See United States v. Gonzalez , 113 F.3d 1026, 1029 (9th Cir. 1997) (holding that, when trial court questioned defendant's attorney about merits of defendant's claim that plea was coerced, defendant's Sixth Amendment rights were violated because "the court invited [the attorney] to contradict his client and to undermine his veracity, [and the defendant] in effect 'was left to fend for himself, without representation by counsel' " (emphasis omitted)); United States v. Sanchez-Barreto , 93 F.3d 17, 22 (1st Cir. 1996) ("[T]he views expressed by [defense counsel] at the plea-withdrawal hearing directly contradicted the position advocated by [the defendant] in the pro se motion to withdraw his guilty plea. Thus, the ... hearing record leaves no doubt that [the defendant] was left to fend for himself, without representation by counsel." (emphasis omitted)); United States v. Ellison , 798 F.2d 1102, 1106-08 (7th Cir. 1986) ("[D]efendant was effectively without counsel at the hearing and was forced to present his motion without the assistance of counsel. Defendant's testimony was unclear and, because he was without counsel, there was no cross-examination of his attorney. Thus, defendant not only was without conflict-free representation at the hearing but also was in effect without the assistance of counsel at all ...."); Carey v. State , 902 P.2d 1116, 1118 (Okla. Crim. App. 1995) ("Petitioner's interests at the evidentiary hearing were to testify against his lawyer to establish that his guilty plea was given involuntarily .... During the evidentiary hearing, Petitioner had no attorney taking part in promoting his interests which were in actual conflict with the interests of [his attorney]. An attorney representing Petitioner's interests would have placed [his attorney] under cross-examination. Petitioner's own appointed defense counsel acted as his adversary.").

See AS 12.72.010 -.040.

Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. , 71 P.3d 811, 822-23 (Alaska 2003).

523 P.2d 421, 425 n.19 (Alaska 1974) (citations omitted).

Strickland v. Washington , 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Fortson v. State , 272 Ga. 457, 532 S.E.2d 102, 105 & n.3 (2000) (footnotes omitted).